**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

                   )

**STEPHEN BECKMAN**       )

                   )

     **v.**              )        **CIVIL ACTION NO.:  03-12567-NG**

                   )

**BULL HN INFORMATION**    )

**SYSTEMS INC.**         )

                   )

_____)

**OPPOSITION OF DEFENDANT BULL HN INFORMATION SYSTEMS INC.**
**TO PLAINTIFF STEPHEN BECKMAN'S MOTION TO COMPEL**
<u>**ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**</u>

I.    <u>Introduction</u>

      The Defendant Bull HN Information Systems Inc. ("Bull HN") hereby opposes the

Motion of Plaintiff Stephen Beckman ("Beckman") to Compel Answers to Interrogatories and

Production of Documents.  Bull HN has diligently and appropriately responded to Beckman's

sweeping discovery requests, which seek documents and information relating to thousands of

former and current Bull HN employees nationwide.

      As described *infra*, Bull HN has produced the responsive documents and information

relating to (a) Beckman, (b) other former and current employees who worked within Beckman's

specific work unit, and (c) employees who worked within the same division and the same facility

as Beckman and who were laid off during the year of and the year after Beckman's notification

of layoff.  Such documents and information are more than sufficient responses to Plaintiff's

overly broad and largely irrelevant discovery requests.  To the extent that Beckman now

demands further answers relating to all other former and current Bull HN employees, such

demands exceed the scope of permissible discovery under the Federal Rules of Civil Procedure and impose an unacceptable burden and expense on Bull HN.

II.     <u>Background</u>

<u>Plaintiff's Employment at Bull HN</u>

Beckman was employed by Bull HN from May 16, 1966 until he was laid off on January 3, 1995.  (Complaint, ¶ 8.)  He began his employment with Bull HN as an entry-level accountant and progressed through various finance positions.  (Black-Holmes Decl., Ex. A at pp. 12, 14-17.)[1]  At the time of his layoff, Mr. Beckman was working at the Lawrence, Massachusetts facility (the "Lawrence Plant") as a Financial Planning Analyst II ("FPA II") for the Finance Department of the Manufacturing Division of Bull HN.  (Black-Holmes Decl., Ex. B at ¶ 3.)  As a FPA II at the Lawrence Plant, Beckman worked within a small unit of employees who were responsible for performing the financial functions associated with the manufacture of certain minicomputer systems at the Lawrence Plant.  (<u>Id.</u> at ¶¶ 2-3.)  Beckman's specific responsibilities included performing financial modeling for the minicomputer systems being assembled, as well as working with the planned cost of shipments,  shipments, surplus and scrap materials at the Lawrence Plant and assisting with periodic physical inventories.  (<u>Id.</u> at ¶ 3.)  The jobs performed at the Lawrence Plant by Beckman and the others within his work unit were specific to the facility and the minicomputer systems being assembled there, including the GCOS6 line of minicomputers.  (<u>Id.</u> at ¶ 2.)

---

[1] "Black-Holmes Decl." refers to the Declaration of Kelly S. Black-Holmes in Support of the Opposition of Defendant Bull HN Information Systems Inc. to Plaintiff Stephen Beckman's Motion to Compel Answers to Interrogatories and Production of Documents, filed herewith.

<u>Layoffs within the Manufacturing Division of Bull HN</u>

Starting in 1991 and continuing for the balance of the 1990s, the Manufacturing Division of Bull HN experienced a significant decrease in the volume of units manufactured. (Black-Holmes Decl., Ex. C at ¶ 2.) The reduction was caused, in substantial part, by the phasing out of the GCOS6 product line, formerly one of Bull HN's key products. (<u>Id.</u>) As a result of the decline in manufacturing volume, Bull HN's manufacturing exceeded its business requirements. (<u>Id.</u>) As manufacturing volume decreased, so, too, did the need for support functions, including Finance. (<u>Id.</u>) In an attempt to generate more workload, the Manufacturing Division began selling its manufacturing capacity to outside companies, a process called contract manufacturing or merchant business. (<u>Id.</u> at ¶ 3.) The drop in manufacturing volume, coupled with the transition into the highly cost-competitive contract manufacturing, resulted in the implementation of drastic cost-cutting measures, including the layoff of employees. (<u>Id.</u> at ¶ 4.)

The cost-cutting measures undertaken by the Manufacturing Division coincided with the cost-cutting measures that other divisions within Bull HN were forced to institute in response to declining profits and fiscal crises. (Black-Holmes Decl., Ex. C at ¶ 5.) Indeed, the economic pressures resulted in the loss of thousands of jobs across many divisions and many facilities of Bull HN. (<u>Id.</u>)

Although layoffs were occurring all across Bull HN, the decisions to make layoffs remained at the division level. (Black-Holmes Decl., Ex. C at ¶ 6.) In implementing layoffs, each division's management determined what reduction of force was necessary to meet cost-cutting requirements. (<u>Id.</u>) The division management then examined the remaining workload and determined how many employees would be laid off from each department within the Division to align the workforce with the amount and type of work generated. (<u>Id.</u>) The Division

management informed its various Department managers of the percentage of his or her

employees that needed to be laid off and looked to the department managers to make

recommendations regarding which employees to layoff.  (Id.)

Beckman's Layoff

The problems facing the Manufacturing Division were magnified in the second half of

1994.  (Black-Holmes Decl., Ex. C at ¶ 8.)  In July 1994, Bull HN decided for business reasons

to cease further research and development into new models or platforms for the GCOS6 line of

minicomputer systems.  (Black-Holmes Decl., Ex. D at Interrogatory 2 and Ex. E at pp. 1-2.)  In

addition, by mid-1994, the transition to contract manufacturing had been announced and was

underway.  (Black-Holmes Decl., Ex. C at ¶ 8 and Ex. F. at pp. 2, 5.)  In fact, in May of 1994,

Bull Manufacturing officially changed its name to Bull Electronics and signaled its movement

away from traditional manufacturing.  (Black-Holmes Decl., Ex. F at pp. 2, 5.)  The decline in

the manufacturing of GCOS6 products, coupled with the transition to contract manufacturing,

had a dramatic impact on the Lawrence Plant.  (Black-Holmes Decl., Ex. C at ¶ 8.)  As a result,

the Manufacturing Division was forced to layoff employees at its Lawrence Plant; and, by late

1995, Bull HN decided to cease the Lawrence Plant manufacturing operations altogether.  (Id.)

Amidst the problems facing the Lawrence Plant, including the erosion of the GCOS6

product line and the transition to contract manufacturing, in late 1994 the Manufacturing

Division management asked Beckman's department manager, Daniel Schroeder, to identify jobs

that could be eliminated or combined, and to recommend employees for layoff accordingly.

(Black-Holmes Decl., Ex. B at ¶ 4.)  After examining his work unit, Mr. Schroeder selected

Beckman and one other employee for layoff.  (Id. at ¶ 5.)  Mr. Schroeder selected Beckman for

layoff because the level of volume of Beckman's activities had declined and because the

-4-

department could easily shift Beckman's remaining activities to two other employees in higher positions who had broader understanding of the total Finance requirements and who had the skills to perform critical day-to-day activities.  (Black-Holmes Decl., Ex. D at Interrogatory 2 and Ex. B at ¶ 5.)  Both Beckman and the other employee received notification of their layoffs on December 16, 1994.  (Complaint, ¶ 11; Black-Holmes Decl., Ex. D at Interrogatory 21.)

<u>This Lawsuit</u>

More than eight and one half years after the date of his layoff notification, Beckman filed a charge of age discrimination against Bull HN with the Massachusetts Commission Against Discrimination (the "MCAD Charge").   (Complaint, ¶ 23.)  While Beckman's MCAD Charge remained pending, Beckman commenced this action on December 19, 2003.  In his Complaint filed with this Court, Beckman repeats his allegation that Bull HN discriminated against him on the basis of age when it terminated him.[2]

The thrust of Beckman's allegations is not that he was subjected to discriminatory treatment during the course of his employment, or even that his individual selection for lay-off was *per se* discriminatory.  Rather, the principal basis for Beckman's Complaint is that the data pertaining to the ages of others laid off from Bull HN purportedly suggests that age was the basis for lay-off decisions.  Indeed, Beckman claims that he "had no way of knowing that he had been subjected to unlawful discrimination" until he received information relating to the age of individuals who were laid off.  (Complaint, ¶¶ 17, 21-22.)

III.    <u>Argument</u>

Throughout his sweeping discovery requests, Beckman seeks information relating to **<u>all</u>** former and current employees of Bull HN from January 1, 1993 to the present.  These requests,

---

[2]       Beckman also asserted causes of action under ERISA and the OWBPA, both of which were dismissed by order of this Court on March 5, 2004.

covering a period of more than twelve years, seek information relating literally to thousands of employees, including employees who worked in different departments, with different supervisors/decisionmakers, in different divisions, and in different facilities.  Because the requests span a twelve-plus year period, much of the information requested is also entirely unrelated to the period in which Beckman was laid off, i.e., late 1994.

To date, Bull HN has provided Plaintiff with the relevant requested documents and information falling essentially into three categories:  documents and information relating (1) to his own employment and layoff, (2) to the layoff or retention of the other employees within his work unit, the Finance Department of the Manufacturing Division in the Lawrence, Massachusetts plant [3], and (3) to layoffs in 1994 and 1995 of all other employees who worked in the Manufacturing Division of Bull HN in the Lawrence, Massachusetts plant.  Taken together, the information and documents produced by Bull HN are more than sufficient to satisfy, and indeed exceed, its discovery obligations under the Federal Rules of Civil Procedure.  See, e.g., Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995) ("Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff.")

Plaintiffs are required to tailor discovery "to suit the particular exigencies of the litigation."  Mack v. Great Atlantic & Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989).  In this case, where the Plaintiff's layoff was directly related to the business conditions at his specific facility, and where the decision to recommend him for a lay-off mandated by a cost-cutting directive was made by his supervisor, it is inappropriate and unduly burdensome to

---

[3]    All employee files and workforce data have been produced pursuant to the terms of the Stipulation and Protective Regarding Personnel Files and Workforce Data of Bull HN Information Systems Inc. which was approved by this Court on January 31, 2005.

require Bull HN to respond to onerous discovery regarding employees who are or were

employed at different facilities and/or different divisions with altogether different

decisionmakers.[4]  This is particularly so if one balances the burden and expense of such an

exercise against its relevance, an undertaking that is left to the sound discretion of the trial court.

See Mack, 871 F.2d at 187 ("Requiring [defendant] to cull through personnel records of

hundreds of employees, at scattered sites in differing labor markets, over a 4-year period, could

plausibly have been viewed as 'unduly burdensome or expensive, taking into account the needs

of the case….'") (quoting Fed. R. Civ. P. 26(b)(1)); Early v. Champion Int'l Corp., 907 F.2d

1077, 1084 (11th Cir. 1990) ("where … the employment decisions were made locally, discovery

on intent may be limited to the employing unit"); see also Herold v. Hajoca Corp., 864 F.2d 317,

322 (4th Cir. 1988) ("It was reasonable to conclude that such region-wide statistics would be of

limited probative value in determining whether discrimination took place in one particular

branch.").

In an attempt to compel further answers relating to all former and current employees

employed by Bull HN over the last twelve years (from 1993 to present), Plaintiff asserts that

such information "may show that Bull had a discriminatory animus and pattern of laying off

older workers."  Such a conclusory assertion, however, fails to meet Plaintiff's burden of

providing factual support for his contention that such evidence is relevant to Beckman's claims

relating to his lay-off, in December of 1994, from the Finance Department of the Manufacturing

Division at the Lawrence facility.  See Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.

---

[4]       By producing the statistical lay-off data and information relating to all employees in the Manufacturing
Division at the Lawrence facility in 1994 and 1995, Bull HN has already voluntarily expanded production beyond
Beckman's specific work unit.

-7-

N.H. 2005) ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance.")

The United States Court of Appeals for the First Circuit has not recognized a pattern and practice disparate impact claim for age discrimination. See Mullin v. Raytheon Co., 164 F.3d 696, 703-04 (1st Cir. 1999). Thus, it is by no means readily apparent that documents and information relating to all former and current employees are relevant to Plaintiff's claim. As a disparate treatment claimant, Plaintiff "bears the burden of providing that [he] was subjected to different treatment than persons *similarly situated* in all relevant aspects." Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995) (internal quotation omitted) (emphasis added). Yet, in this instance, the majority of the information sought by Plaintiff is statistical data pertaining to Bull HN's *entire workforce*. While statistical evidence may come into play in a disparate treatment case, such statistical evidence should be limited to the decisionmakers involved and the similarly situated employees to whom the Plaintiff compares. Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003) (statistical evidence must "tend[] to prove the discriminatory intent of the decisionmakers involved"); see also Currier v. United Technologies Corp., 393 F.3d 246, 253 n.7 (1st Cir. 2004) (pointing out that there are cases which "explicitly support [defendant's] argument that statistical evidence must compare similarly situated employees"). Here, Plaintiff has failed to provide any reasons why he should be provided with information relating to employees, both former and current, who worked in different departments, different divisions, different plants, and different time periods than Plaintiff, and who did not have the same supervisor as Plaintiff and are not similarly situated to Plaintiff. Compare Flebotte v. Dow Jones & Co., No. 9730117-FHF, 2000 U.S. Dist. LEXIS 19875, at * 15 (D. Mass. Dec. 6, 2000)

(explaining that there were only "minor differences" between the employees used in plaintiff's statistical sample, as all of the employees utilized worked in the customer service area).[5]

In his discovery requests, Beckman appears to be searching for evidence on which to base an age discrimination claim, even though he departed from Bull HN with no sense that he had been the victim of discrimination. Because the documents and information provided by Bull HN, both in the context of discovery and in accordance with Orders of this Court, do not support the Plaintiff's allegations, the Plaintiff attempts to cast a wider net, to include non-similarly situated employees. Obviously, he does so in the unfounded hope that he will discover information that will portray Bull HN <u>as a whole</u> in a negative light. Such a fishing expedition is improper and is not permitted by the Federal Rules of Evidence. <u>See</u> <u>Milazzo v. Sentry Ins.</u>, 856 F.2d 321, 322 (1st Cir. 1998)("Discovery is not a fishing expedition") (internal quotation omitted); <u>Avent, Inc. v. American Motorists Ins. Co.</u>, 115 F.R.D. 588, 592 (S.D.N.Y. 1987) ("The discovery rules are not a hunting license to conjure up a claim that does not exist.").

IV.    <u>Specific Responses to the Requests and Interrogatories Identified in Plaintiff's Motion</u>

<u>Interrogatory Number 4</u>

Plaintiff's Interrogatory Number 4 seeks excessive data with respect to Bull HN's "entire employment force… from January 1, 1993 to date." This Interrogatory is overly broad, unduly burdensome and oppressive. The information requested in Interrogatory 4 is not limited to any particular department, facility, decisionmaker, or division of Bull HN, nor is it appropriately limited in time. Rather, this Interrogatory seeks onerous amounts of data pertaining to the

---

[5] Moreover, to the extent Plaintiff seeks anecdotal evidence relating to all employees who have filed claims against Bull HN, Plaintiff must establish how evidence is admissible. <u>Pedraz v. Holiday Housewares, Inc.</u>, 203 F.R.D. 40, 42 (D. Mass. 2001). While such anecdotal evidence does not have to "coincide precisely with the particular actors or timeframe involved in the specific claim," such evidence can be "too attenuated to justify admission." <u>Cummings v. Standard Register Co.</u>, 265 F.3d 56, 63 (1st Cir. 2001) (internal quotation omitted).

thousands of employees that have been employed at Bull HN since January 1, 1993.  To require Bull HN to cull through the records regarding those employees in an attempt to satisfy Plaintiff's request would be extremely time-consuming, burdensome, and expensive.  Moreover, the Plaintiff fails to identify how all this information is relevant to the claims or defenses of the parties in this litigation; and, indeed, it is not.  Plaintiff has proffered no argument establishing that this data pertains to similarly situated employees to whom he should be compared.  Rather, Plaintiff merely states that such data "may show that the Defendant had a history of discriminatory animus and pattern of terminating older employees."  As previously discussed, such a conclusory remark is entitled to little weight, particularly since Bull HN already has produced the information relating directly to Beckman and the personnel files of each of the employees within Beckman's work unit.

Interrogatory Number 5

Plaintiff's Interrogatory Number 5 seeks data with respect to every Bull HN employee "who was terminated during the period January 1, 1993 to present."  This Interrogatory is overly broad, unduly burdensome and oppressive. The information requested in Interrogatory 5 is not limited to any particular department, facility, decisionmaker, or division of Bull HN, nor is it appropriately limited in time.  Moreover, this Interrogatory inquires into all employees who were terminated, regardless of the reason.

Because of the overbreadth of this request, Bull HN has objected and has refused to produce information on those former employees who are not similarly situated to Plaintiff.  As previously explained, Beckman was selected for layoff by his manager, Daniel Schroeder, and Bull HN has produced the personnel files and certain relevant information of the other employees within Beckman's work unit.  In addition, Bull HN has produced data, including

name, address, age, title, and date of layoff notification, on all Manufacturing Division employees who worked in the Lawrence, Massachusetts plant and who were laid off in 1994 and 1995. Such information is more than sufficient to satisfy Bull HN's burden of production.

To the extent the Plaintiff seeks information relating to the remaining employees who worked in departments, facilities, and divisions different than Beckman and who were terminated for any reason from 1993 to present, Plaintiff has failed to come forward with any argument establishing that such information is relevant to his claim. Plaintiff's conclusory remark that such data "may show that the Defendant had a history of discriminatory animus and pattern of terminating older employees" is entitled to little weight, particularly when weighed against the burden and expense of requiring Bull HN to cull through more records.

Interrogatory Number 6

Plaintiff's Interrogatory Number 6 seeks information relating to any complaint of discrimination based on age that Bull HN "has ever received." This Interrogatory is overly broad, unduly burdensome and oppressive. The information requested in Interrogatory 6 is not limited to any particular department, facility, or division of Bull HN. Moreover, this Interrogatory inquires into all claims regards of the time period and whether or not they were connected with layoffs.

Because of the overbreadth of this request, Bull HN has objected and has refused to produce information on claims from employees who were not similarly situated to Plaintiff. As previously explained, Beckman was selected for layoff by his manager, Daniel Schroeder, after the manufacturing functions of the Lawrence Plant were severely curtailed. Bull HN has produced the court and administrative agency filings in connection with age discrimination claims stemming from the layoffs in 1994 and 1995 of Manufacturing Division employees who

worked at the Lawrence Plant. Such information is more than sufficient to satisfy Bull HN's burden of production.

To the extent the Plaintiff seeks information relating to any other claims stemming from employees who worked in departments, facilities, and divisions different than Beckman, or relating to claims that did not arise out of layoffs in 1994 or 1995 in the Manufacturing Division at the Lawrence plant, Plaintiff has failed to come forward with any argument establishing that such information is relevant to his claim. Plaintiff's conclusory remark that such data "may show that the Defendant had a history of discriminatory animus and pattern of terminating older employees" is entitled to little weight. This Interrogatory is too broad to impose upon Bull HN a burden to search for, collect and produce information and documents from the files of thousands of present and former employees, particularly where the "allegations, charges or concerns" of those individuals are entirely unrelated to the charges levied by Plaintiff in this litigation. To overcome Bull HN's objections, Plaintiff must show how evidence of alleged discriminatory conduct against other employees might be admissible in this case. Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40, 42 (D. Mass. 2001). Beckman has simply failed to do so.

Interrogatory Number 18

Interrogatory Number 18 seeks information relating to each employee who was terminated "based on layoff or job elimination, for the period January 1, 1993 to the present." Just as with Interrogatory Number 5, this Interrogatory is overly broad, unduly burdensome and oppressive. Although this Interrogatory does attempt to limit the type of termination to "layoff or job elimination," the Interrogatory does not limit its request to any particular department, facility, decisionmaker or division of Bull HN, and does not limit its request to a reasonable time period.

-12-

As discussed with respect to Interrogatory Number 5, Bull HN has objected and has refused to produce information on those former employees who are not similarly situated to Plaintiff. Here, Plaintiff seeks information on employees unrelated to this litigation, who held positions wholly unrelated to the one held by Plaintiff, who worked in divisions and departments that are wholly unrelated to the division and department worked in by Plaintiff, and who worked at plants wholly unrelated to the plant at which Plaintiff worked. Bull HN has produced certain data, name, addresses, titles, ages, and dates of layoff, for those employees who were laid off in 1994 and 1995 and who worked in the Lawrence Plant in the Manufacturing Division of Bull HN. This data goes above and beyond Beckman's specific work unit and is more than sufficient evidence regarding similarly situated employees.

Interrogatory Number 21

Interrogatory Number 21 seeks information relating to other employees who were "subject to layoff or job elimination based on the same factors that resulted in plaintiff's layoff or job elimination." In response to this Interrogatory, Bull HN provided the requested information with respect to the one other employee within Beckman's work unit who was laid off at the same time as Beckman. As previously explained, Beckman was selected for layoff in late 1994 when his department manager, Daniel Schroeder, was asked to look for jobs that could be eliminated or combined, given the decrease in the manufacture of the GCOS6 product line and the transition to contract manufacturing. At the time that Mr. Schroeder chose Beckman for layoff, he chose one other employee for layoff. To the extent Plaintiff seeks information regarding other layoffs that took place at different times or in different work units, those layoffs simply were not based on "the same factors" as the layoff of Beckman.

-13-

Interrogatory Number 23

Interrogatory Number 23 seeks the average age at the time of Beckman's layoff and at the present for the total employees at Bull HN, for the employees within each department within Bull HN, and for the employees in Beckman's pay scale or job grade. This Interrogatory is extremely overbroad, unduly burdensome and oppressive. The information requested in Interrogatory Number 23 is not limited to any particular department, facility, or division of Bull HN.

Because of the overbreadth of this request, Bull HN has objected and has refused to produce information relating to the average age of those employees who are not similarly situated to Plaintiff. Bull HN has produced the average age on December 31, 1994 and December 31, 1995 of those Manufacturing Division employees who worked in the Lawrence Plant.

To the extent the Plaintiff seeks information relating to the average age of employees who worked in other facilities and divisions, Plaintiff has failed to come forward with any argument establishing that such data is relevant to his claim. Plaintiff's conclusory remark that the average age of Bull HN's "entire workforce is relevant to show whether older workers were laid off in larger numbers than other workers," is entitled to little weight, particularly when weighed against the burden and expense of requiring Bull HN to cull through records to determine ages of all employees. Indeed, the only similarly situated employees are those within Beckman's work unit, or at most, those within the Manufacturing Division that worked at the Lawrence Plant at or about the time of Beckman's layoff. To the extent the average age of that work population could be and is relevant, Bull HN has provided it.

<u>Document Request Number 2</u>

Document Request Number 2 seeks all documents and records regarding "Defendant's layoffs from January 1, 1993 to the present."  Just as with Interrogatories Number 5 and 18, this Request is overly broad, unduly burdensome and oppressive.  This Request is not limited to any particular department, facility, decisionmaker or division of Bull HN and is not limited to a reasonable time period.

As discussed with respect to Interrogatories Number 5 and Number 18, Bull HN has objected and has refused to produce information on those former employees who are not similarly situated to Plaintiff.   Bull HN has produced certain data, name, addresses, titles, ages, and dates of layoffs, for those employees who were laid off in 1994 and 1995 and who worked in the Lawrence Plant in the Manufacturing Division of Bull HN.  This data goes above and beyond Beckman's specific work unit and is more than sufficient evidence regarding similarly situated employees.

<u>Document Request 6</u>

Document Request 6 seeks all waivers and releases "Defendant may have signed to settle pending EEOC or MCAD claims, civil suits, or in conjunction with employee discharges, voluntary or involuntary layoffs."  This Request is extremely broad, unduly burdensome, oppressive, and seeks information which is not relevant to the Plaintiff's claim.  This Request is not limited to any particular department, facility, or division of Bull HN.  Moreover, this Interrogatory inquires into all claims regardless of the time period, the type of claim, and whether or not they were connected with layoffs.

Because of the overbreadth of this request, Bull HN has objected and produced only those non-confidential waivers or releases that it signed, if any, in connection with age

discrimination claims stemming from layoffs in 1994 or 1995 of Manufacturing Division employees who worked at the Lawrence Plant. To the extent Plaintiff seeks waivers or releases in conjunction with other claims of non-similarly situated employees, Plaintiff has failed to demonstrate relevance. Plaintiff's conclusory remark that such documents "may show that the Defendant had a history of discriminatory animus and pattern of terminating older employees" is entitled to little weight, particularly when weighed against the burden and expense of requiring Bull HN to cull through more records.

Document Request Number 10

Document Request Number 10 seeks all documents "concerning any litigation, complaints, or charges involving age discrimination by employees of the Defendant, from January 1, 1993 to the present." Just as with Interrogatory Number 6, this Request is overly broad, unduly burdensome and oppressive, as it is not limited to any particular department, facility, or division of Bull HN. Moreover, this Request inquires into all claims regardless of the time period and whether or not they were connected with layoffs.

As discussed with respect to Interrogatory Number 6, Bull HN has objected and has refused to produce information on claims from employees who were not similarly situated to Plaintiff. Bull HN has produced the court and administrative agency filings in connection with age discrimination claims stemming from the layoffs in 1994 and 1995 of Manufacturing Division employees who worked at the Lawrence Plant. Such information is more than sufficient to satisfy Bull HN's burden of production.

V.    Conclusion

Bull HN has provided the Plaintiff with the relevant documents and information relating to Plaintiff's employment and layoff and the employment and layoff of other potentially

similarly situated employees. Plaintiff, however, has undertaken a massive fishing expedition in an attempt to find evidence to bolster his otherwise unsupported claim of age discrimination. Such a fishing expedition imposes a tremendous burden and expense on Bull HN and simply does not comport with the letter or the spirit of the discovery rules.

Wherefore, Defendant Bull HN Information Systems Inc. respectfully requests that this Court:

1.    Deny all portions of the Plaintiff's Motion to Compel;

2.    Grant Defendant costs and attorneys' fees associated with this Motion;

3.    Order such other relief that this Court deems just and proper.

To the extent this Court disregards the arguments contained herein and orders the production of further documents and/or information, Defendant Bull HN Information Systems Inc. respectfully requests that this Court grant Defendant Bull HN Information Systems Inc. at least forty-five days in which to provide documents and/or information to Plaintiff pertaining to Massachusetts facilities, and sixty days for documents and/or information relating to out of state facilities.

Respectfully submitted,

BULL HN INFORMATION SYSTEMS INC.

By its attorneys,


/s/ Kelly S. Black-Holmes_____
Joan A. Lukey (BBO #307340)
Kelly S. Black-Holmes (BBO# 650461)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Dated:  March 25, 2005


### Request for Oral Argument

Pursuant to Local Rule 7.1(D), Bull HN respectfully requests that the Court hear oral argument on this matter.



### CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2005, I caused a true and accurate copy of the above document to be served either by electronic transmission or by hand upon Denise L. Page, Esq., Barron & Stadfeld, P.C., 50 Saniford Street, Boston, MA 02108.


/s/ Kelly S. Black-Holmes _____
Kelly S. Black-Holmes

-18-

US1DOCS 5028932v1