UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                                          \*
STEPHEN BECKMAN,                                          \*
        Plaintiff,                                        \*
                                                          \*         C.A. No.: 03-CV-12567NG
                                                          \*
v.                                                        \*
                                                          \*
BULL HN INFORMATION SYSTEMS INC.,                         \*
        Defendant                                        \*
                                                          \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MOTION FOR RECONSIDERATION TO COMPEL DEFENDANT, BULL HN INFORMATION SYSTEM INC.'S ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Pursuant to Judge Gertner's Order dated March 31, 2005, Plaintiff hereby requests that

the Court reconsider Plaintiff's Motion to Compel Defendant, Bull HN Information System,

Inc.'s Answers to Interrogatories and Production of Documents.  As grounds for this Motion for

Reconsideration, Plaintiff provides the following:

On March 28, 2005, the Court entered an order denying Plaintiff's Motion to Compel

Defendant, Bull HN Information Systems, Inc.'s Answers to Interrogatories and Production of

Documents to the extent that Plaintiff requested production of information with respect to Bull

HN Information 's entire workforce.  The Court based its decision, in part, on the fact that the

Court of Appeals has held that the Age Discrimination in Employment Act (ADEA) does not

impose liability for disparate impact pursuant to Mullin v. Raytheon Co., 164 F.3d 696, 703-04

(1st Cir. ) cert. Denied, 528 U.S. 811 (1999).  In light of the Supreme Court's recent decision in

Smith v. City of Jackson, (March 30, 2005), ruling that there is in fact a claim for disparate

impact age discrimination available under the ADEA, the Court's ruling in the case at bar should

be reconsidered.  According to <u>Smith v. City of Jackson</u>, a Plaintiff may identify a practice that

has an adverse impact on older workers to show discriminatory animus.  The information

pertaining to the company wide layoffs will further show that Bull's layoffs not only had an

adverse impact on older workers, but also that the layoffs are evidence of systemic disparate

treatment as well.

Mr. Beckman has established a prima facie case of age discrimination.  In <u>Thomas v.</u>

<u>Eastman Kodak Co.</u>, 183 F.3d 38 (1st Cir. 1999), the Court of Appeals restated the "burden-

shifting framework," <u>Mulero-Rodriguez v. Ponte</u>, 98 F.3d 670, 673 (1st Cir. 1996), first

described in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817

(1973), further developed in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248,

67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), and applicable in cases involving claims of

employment discrimination under Title VII as well as ADEA:

> First, the plaintiff must establish a prima facie case that plaintiff (1) was
> within a protected class; (2) met the employer's legitimate performance
> expectations; (3) was adversely affected; and (4) was replaced by another with
> similar skills and qualifications. Once plaintiff does so, the burden shifts to the
> employer to produce a valid and nondiscriminatory reason for the dismissal. In
> the final stage, the burden shifts back to the plaintiff to show that the employer's
> stated reason for plaintiff's dismissal was  false and but a pretext for
> discrimination.

<u>Thomas</u>, 183 F.3d at 56 (quoting <u>Mulero-Rodriguez</u>, 98 F.3d at 673).

In cases where termination was part of a larger reduction in labor force, a plaintiff need

not show replacement by another with similar skills and qualifications. Plaintiff may satisfy

prong (4) of the prima facie case, instead, by "demonstrating either that 'the employer did not

treat **age** neutrally or that younger persons were retained in the same position.'" <u>LeBlanc v. Great</u>

American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (quoting Hebert v. Mohawk Rubber Co., 872

F.2d 1104, 1111 (1s Cir. 1989)); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir.

1995). The information pertaining to the company wide layoffs will bolster Plaintiff's

contention that Bull did not treat age neutrally in conducting the layoffs.

Mr. Beckman has alleged age discrimination through the ADEA as well at M.G.L. Ch.

151B, whether it be based upon disparate treatment or disparate impact. Plaintiff's request for

information pertaining to Bull's layoffs with regard to their entire workforce can be used to show

discriminatory motive in support of both disparate treatment and disparate impact claims.


A.  Company Wide Statistical Information May Show Disparate Treatment of Older
    Workers by Bull

Discriminatory motive can in some situations be inferred from the mere fact of

differences in treatment. McDonnell Douglas Corp. v. Green, 411 U.S. at 335, n. 15 (1973).

Statistics as to an employer's general employment policies and practice are admissible and

helpful to determine whether an employer's actions conformed to a general pattern of

discrimination. Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (1970). Systemic disparate

treatment can be inferred from an employer's actions as having a policy or practice of

discriminating. Statistical evidence that older employees were terminated at a disproportionate

rate may provide strong evidence of age discrimination. Mesnick v. General Electric Co., 950

F.2d 816 (1991) citing Olivera v. Nestle Puerto Rico, Inc., 922 F.2d 43, 49 (1st Cir. 1990).

Statistical analyses have been held admissible in disparate treatment discrimination cases unless

they are so incomplete as to be inadmissible as irrelevant. Currier v. United Techs. Corp., 393

F.3d 246  (1st Cir. 2004). To establish a case based on statistical evidence, the plaintiff compares

the relevant portion of the employer's workforce to the relevant labor pool. If the disparity

between the two is great enough, an inference of discriminatory intent arises. As the Supreme Court explained, "such imbalance is often a telltale sign of purposeful discrimination." Teamsters v. United States, 431 U.S. 324, 340 n. 20 (1977). Courts typically infer a discriminatory motive from this difference in treatment. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 361 & n.46, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977). In Currier, the statistical analysis was of the employer's entire workforce, not just a particular group of "similarly situated" employees. Id at 250. In Currier, the First Circuit Court upheld the jury award for age discrimination based on disparate treatment that was proven in part by the statistical evidence regarding the entire workforce. Similarly, in the case at bar, in order to help demonstrate statistically that Bull did not treat age neutrally, plaintiff seeks to show that when the group of terminated employees is compared with the pool of employees from which the terminated employees were drawn, the comparison shows "significant discrepancy in the incidence of protected status." Shenker v. Lockheed Sanders, Inc., 919 F. Supp. 55, 59 (D. Mass. 1996). Plaintiff argues that the relevant pools for statistical purposes are those who were laid off from Bull's entire workforce because the reductions in force were company wide during the time period that he was laid off.

The statistical evidence already provided in the case at bar suggests that older worker at Bull were in fact intentionally targeted for layoffs, not just that older workers were more negatively impacted by the layoffs. According to documents provided by Bull, out of the 138 layoffs in the *manufacturing division* in Lawrence from January 10, 1994 to December 1, 1995, 110 of them were 40 or over, amounting to approximately 79% of the laid off employees. See Attached Exhibit A. In addition, with regard to the layoffs with a notification date of December 16, 1994, forty three (43) out of the fifty (50) within the manufacturing division, were 40 or

older, amounting to 86% of the layoffs at that time.  See attached Exhibit B.  Also, out of the

approximately 881 remaining manufacturing employees after the December 16, 1994

notification, approximately 551 were 40 or older, equaling 67.9% of the remaining

manufacturing division employees.  See attached Exhibit B.  This is a difference of

approximately 18% in looking at the pool of those employees who were laid off and those who

were not.  In addition, Defendant in its defense has submitted an Affidavit from Cecile Wright,

indicating that the average age of all U.S. employees was 42.6 on December 31, 1989 and on

December 31, 1995 it was 46.3, and that among Massachusetts employees, the average age was

41.7 on December 31, 1989 and 45.2 on December 31, 1995.  See attached Exhibit C.  Since

Defendant has introduced the average age of all U.S. employees and all Massachusetts'

employees, Plaintiff should be allowed to obtain the underlying date regarding the ages of the

individuals company wide in order to determine whether Defendant's contentions are in fact true.

Also, additional statistical evidence as to the company wide layoffs may further support a prima

facie case of systemic disparate treatment.  In addition, Plaintiff should be allowed access to

company wide information as to who was laid off because Plaintiff had previously worked in

other Bull offices, he had worked only two years prior to his layoff in the Billerica facility and

had also worked in the Brighton facility.  According to Mr. Beckman, he was supposed to have

only been temporarily placed in the Lawrence facility, but was laid off instead of being allowed

to transfer to another facility, as other employees had been.  See copy of Mr. Beckman's

deposition transcript attached hereto as Exhibit D.  Company-wide statistics would be useful in

establishing the presence or absence of a general climate of age bias throughout Bull.  Therefore,

Mr. Beckman's request for additional information as detailed more fully in the Motion to

Compel Defendant, Bull HN Information Systems Inc.'s Answers to Interrogatories and

Production of Documents should be allowed.

### B. Company Wide Statistical Information May Show a Disparate Impact on Older Workers

The ages of the people who were laid off company wide may also show that Bull's policies in carrying out its reductions in force had a discriminatory impact upon older workers. Under a disparate impact approach, the plaintiff does not need to prove intentional discrimination. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988). "The necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Id. In all events, however, a defendant's good faith is not a defense to a disparate impact claim." E.E.O.C. v. Steamship Clerk's Union, 48 F.3d 594, 601 (1st Cir. 1995) cert. den., 516 U.S. 814, 116 S. Ct. 65, 133 L. Ed. 2d 27 (citing Griggs v. Duke Power Co., 401 U.S. 424, 431-32, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971). Statistical evidence is a means of showing disparate impact. See Watson v. Fort Worth Bank & Trust. A plaintiff in a disparate impact case must first establish a prima facie case by identifying a specific employment practice and then presenting statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group. Watson, 487 U.S. at 994. If the plaintiff succeeds in making this prima facie showing, the burden then shifts to the employer to produce evidence demonstrating a legitimate business reason for the challenged practice. Id. at 997-98. n8. If the employer successfully establishes a business justification, the plaintiff may still prevail by demonstrating that a comparably effective alternative practice would produce a significantly smaller adverse impact on the protected class.

Id. at 998. In a discrimination case proceeding under a so-called disparate impact theory, statistical evidence is obviously of central importance, because in such a case the plaintiff may show that a particular job requirement has a differential impact on a defined protected group. Adams v. Ameritech Servs., Inc., 231 F.3d 414 (7th Cir. 2000). Statistical evidence is crucial in disparate impact cases, where plaintiffs need not prove discriminatory intent but must show that specific employment practices "select applicants . . . in a racial pattern significantly different from that of the pool of applicants." Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 45 L. Ed. 2d 280, 95 S. Ct. 2362 (1975). In these two contexts--where liability depends on a challenge to systemic employment practices--courts require finely tuned statistical evidence, normally demanding a comparison of the employer's relevant workforce with the qualified populations in the relevant labor market. Krodel v. Young, 242 U.S. App. D.C. 11(1984) citing Hazelwood School District v. United States, 433 U.S. 299, 308 n.13, 53 L. Ed. 2d 768, 97 S. Ct. 2736 (1977); Segar, 738 F.2d at 1274-75; Davis v. Califano, 198 U.S. App. D.C. 224, 613 F.2d 957, 963 (D.C. Cir. 1979).

     In the case at bar, the specific employment practice was the laying off of older employees. Based on the statistical evidence already provided by Bull regarding the number of employees who were laid off, Plaintiff has a legitimate disparate impact claim for age discrimination. Information pertaining to the ages of all employees laid off company wide will further show that statistically, the layoffs had a disproportionate impact upon older workers throughout Bull. Because Plaintiff's statistical evidence must be completely accurate and therefore should be based upon Bull's entire workforce or at least compared to Bull's entire workforce, at least the workforce at the other Massachusetts facilities in Billerica and Brighton, Plaintiff requests that the Court order Bull to provide company wide date as to all layoffs.

Wherefore, Plaintiff respectfully requests that this Court reconsider the previous order denying Plaintiff's Motion to Compel Defendant, Bull Information Systems Inc.'s Answers to Interrogatories and Production of Documents in order to allow Plaintiff access to company wide information regarding the Bull layoffs. A copy of Plaintiff's Motion for Reconsideration to Compel Defendant, Bull HN Information System, Inc.'s Answers to Interrogatories and Production of Documents is attached hereto as Exhibit E is in incorporated herein by reference.

## REQUEST FOR HEARING AND ORAL ARGUMENT.

Plaintiff respectfully requests a hearing and oral argument on this matter.

Respectfully submitted,
The Plaintiff,
By his attorneys,

/s/ Nancie L. Edgren
Denise L. Page, Esq.
BBO No. 119415
Nancie L. Edgren, Esq.
BBO No. 648665
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
617.723.9800

Date: April 15, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                               *
STEPHEN BECKMAN,                               *
         Plaintiff,                            *
                                               *       C.A. No.:  03-CV-12567NG
v.                                             *
                                               *
BULL HN INFORMATION SYSTEMS INC.,              *
         Defendant                             *
                                               *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

### DECLARATION OF NANCIE L. EDGREN IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION TO COMPEL DEFENDANT, BULL HN INFORMATION SYSTEM INC.'S ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

I, Nancie L.Edgren, hereby depose and state the following:

1.   I am an associate at Barron and Stadfeld, P.C. and am involved in the firm's representation of the Plaintiff, Stephen Beckman, in the above matter.

2.   Attached as Exhibit A are true and accurate copies of documents provided by Bull HN Information Systems Inc. during the course of discovery that purportedly reflect the titles and ages of layoffs of employees who worked in the manufacturing division in the Lawrence plant and whose notification date occurred in 1994 and 1995;

3.   Attached as Exhibit B are true and accurate copies of documents provided by Bull HN Information Systems Inc. during the course of discovery that purportedly reflect the Manufacturing Division Layoffs with a notification date of December 16, 1994;

4.   Attached as Exhibit C are true and accurate copies of documents provided by Bull HN Information Systems Inc. during the course of discovery that is an Affidavit of Cecile Wright, Vice President for Human Resources;

5.   Attached as Exhibit D are true and accurate copies of excerpts from the Deposition of Stephen Beckman held on December 16, 2004;

6.    Attached as Exhibit E are true and accurate copies of Plaintiff's Motion to Compel Defendant, Bull HN Information System Inc.'s Answers to Interrogatories and Production of Documents.

Respectfully submitted,
The Plaintiff,
By his attorneys,


/s/ Nancie L. Edgren
Denise L. Page, Esq.
BBO No. 119415
Nancie L. Edgren, Esq.
BBO No. 648665
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
617.723.9800

Date:  April 15, 2005


320542/file no. 20731-1

# EXHIBIT A

| NAME | Age as of Notif | JOB TITLE | NOTIFICATION DATE | Street1 | Street2 | City | State | Zip |
|------|------|-----------|------|---------|---------|------|-------|-----|
| | 41 | ACCOUNTANT I | 1/10/1994 | | | | | |
| | 34 | ASSEMBLY ASSOC II-N | 2/4/1994 | | | | | |
| | 34 | ACCOUNTANT II | 2/11/1994 | | | | | |
| | 39 | ASSEMBLY ASSOC II | 3/3/1994 | | | | | |
| | 39 | MIS BUS ANALYST III | 4/1/1994 | | | | | |
| | 55 | LOCATION DIR LAW FAC | 4/4/1994 | | | | | |
| | 57 | NEW PROD & TECH DIR | 6/10/1994 | | | | | |
| | 45 | FINANCE ASSOC III | 7/29/1994 | | | | | |
| | 55 | MFG MATERIALS I | 7/29/1994 | | | | | |
| | 58 | MFG TECH II | 7/29/1994 | | | | | |
| | 35 | AREA COORD II | 7/29/1994 | | | | | |
| | 40 | MFG MATERIALS II | 7/29/1994 | | | | | |
| | 36 | MFG TECH III | 7/29/1994 | | | | | |
| | 49 | MFG TECH II | 7/29/1994 | | | | | |
| | 46 | ASSEMBLY ASSOC II | 7/29/1994 | | | | | |
| | 50 | PROGRAM MANAGER II | 7/29/1994 | | | | | |
| | 49 | MFG TECH III | 7/29/1994 | | | | | |
| | 57 | ENG TEST IV | 7/29/1994 | | | | | |
| | 55 | PROCESS ASSOC I | 7/29/1994 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 7/29/1994 | | | | | |
| | 52 | AREA COORD II | 7/29/1994 | | | | | |
| | 44 | ACCOUNTANT II | 7/29/1994 | | | | | |
| | 56 | PROCESS ASSOC I | 7/29/1994 | | | | | |
| | 36 | AREA COORD III | 7/29/1994 | | | | | |
| | 40 | MFG TECH III | 7/29/1994 | | | | | |
| | 60 | DIST ASSOC II | 7/29/1994 | | | | | |
| | 36 | MFG TECH III | 7/29/1994 | | | | | |
| | 51 | DIST ASSOC II | 7/29/1994 | | | | | |
| | 42 | MFG TECH III | 7/29/1994 | | | | | |
| | 46 | PROCESS ASSOC I | 7/29/1994 | | | | | |
| | 58 | SECRETARY II | 7/29/1994 | | | | | |
| | 46 | ASSEMBLY ASSOC II | 7/29/1994 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 7/29/1994 | | | | | |
| | 40 | ENG PRODUCTION III | 7/29/1994 | | | | | |
| | 42 | MFG TECH III | 7/29/1994 | | | | | |
| | 49 | DIST ASSOC I | 7/29/1994 | | | | | |
| | 51 | ASSEMBLY ASSOC II | 7/29/1994 | | | | | |
| | 30 | SECRETARY III | 7/29/1994 | | | | | |
| | 47 | MIS BUS ANALYST II | 7/29/1994 | | | | | |
| | 54 | DIST ASSOC I | 7/29/1994 | | | | | |
| | 58 | ENG QUALITY IV | 7/29/1994 | | | | | |
| | 49 | DIST ASSOC II | 7/29/1994 | | | | | |
| | 30 | MFG TECH II | 7/29/1994 | | | | | |
| | 52 | ASSEMBLY ASSOC II | 8/8/1994 | | | | | |
| | 54 | PROGRAM MANAGER III | 8/15/1994 | | | | | |
| | 35 | MFG MGR III | 8/22/1994 | | | | | |
| | 55 | PROCESS ASSOC I | 9/26/1994 | | | | | |
| | 43 | SECURITY OFFICER III | 12/16/1994 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |
| | 57 | FIN PLNG ANALYST II | 12/16/1994 | | | | | |
| | 38 | MFG TECH III | 12/16/1994 | | | | | |
| | 26 | MMP | 12/16/1994 | | | | | |
| | 42 | SECURITY OFFICER I | 12/16/1994 | | | | | |
| | 57 | FORECAST/SCHED II | 12/16/1994 | | | | | |
| | 46 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |
| | 57 | MFG TECH III | 12/16/1994 | | | | | |
| | 55 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |
| | 55 | PROCESS ASSOC I | 12/16/1994 | | | | | |
| | 50 | PROCESS ASSOC II | 12/16/1994 | | | | | |
| | 46 | MFG TECH II | 12/16/1994 | | | | | |
| | 28 | ACCOUNTANT I | 12/16/1994 | | | | | |
| | 46 | ASSEMBLY ASSOC III | 12/16/1994 | | | | | |
| | 48 | MFG TECH III | 12/16/1994 | | | | | |
| | 28 | PROGRAM MANAGER II | 12/16/1994 | | | | | |
| | 58 | MFG MATERIALS III | 12/16/1994 | | | | | |
| | 48 | MFG TECH III | 12/16/1994 | | | | | |
| | 56 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |
| | 55 | MFG TECH III | 12/16/1994 | | | | | |
| | 44 | MFG TECH II | 12/16/1994 | | | | | |
| | 56 | MFG MATERIALS II | 12/16/1994 | | | | | |
| | 59 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |

REDACTED     REDACTED     REDACTED

| NAME | Age as of Notif | JOB TITLE | NOTIFICATION DATE | Street1 | Street2 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| | 48 | SECRETARY III | 12/16/1994 | | | | | |
| | 51 | PROGRAM MANAGER II | 12/16/1994 | | | | | |
| | 45 | FORECAST/SCHED III | 12/16/1994 | | | | | |
| | 56 | MFG MATERIALS II | 12/16/1994 | | | | | |
| | 29 | SECRETARY II | 12/16/1994 | | | | | |
| | 34 | MFG TECH II | 12/16/1994 | | | | | |
| | 23 | MMP | 12/16/1994 | | | | | |
| | 51 | SECURITY OFFICER I | 12/16/1994 | | | | | |
| | 49 | SALES DIRECTOR - LMO | 12/16/1994 | | | | | |
| | 50 | DIST ASSOC II | 12/16/1994 | | | | | |
| | 51 | ASSEMBLY ASSOC I | 12/16/1994 | | | | | |
| | 57 | MFG TECH III | 12/16/1994 | | | | | |
| | 52 | ASSEMBLY ASSOC II | 12/16/1994 | | | | | |
| | 54 | FIELD ENGINEER II | 1/9/1995 | | | | | |
| | 52 | MFG MGR III | 4/3/1995 | | | | | |

REDACTED

REDACTED

| NAME | Age as of Notif | JOB TITLE | NOTIFICATION DATE | Street1 | Street2 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| | 35 | AREA COORD III | 8/14/1995 | | | | | |
| | 38 | MFG TECH II | 9/11/1995 | | | | | |
| | 57 | PROCESS ASSOC I | 9/11/1995 | | | | | |
| | 54 | ASSEMBLY ASSOC II | 9/11/1995 | | | | | |
| | 58 | ASSEMBLY ASSOC III | 9/11/1995 | | | | | |
| | 57 | ASSEMBLY ASSOC II | 9/11/1995 | | | | | |
| | 35 | ASSEMBLY ASSOC III | 9/11/1995 | | | | | |
| | 58 | ASSEMBLY ASSOC II | 9/11/1995 | | | | | |
| | 60 | ASSEMBLY ASSOC II | 9/11/1995 | | | | | |
| | 38 | MFG TECH III | 9/11/1995 | | | | | |
| | 47 | ASSEMBLY ASSOC III | 9/11/1995 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 9/11/1995 | | | | | |
| | 53 | PROCESS ASSOC II | 9/11/1995 | | | | | |
| | 59 | MFG MATERIALS II | 9/15/1995 | | | | | |
| | 53 | MFG MGR II | 10/9/1995 | | | | | |
| | 57 | MFG TECH II | 11/1/1995 | | | | | |
| | 46 | MFG TECH III | 11/6/1995 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 11/6/1995 | | | | | |
| | 56 | ASSEMBLY ASSOC II | 11/6/1995 | | | | | |
| | 47 | MAINTENANCE TECH I | 11/6/1995 | | | | | |
| | 54 | ASSEMBLY ASSOC II | 11/6/1995 | | | | | |
| | 47 | MFG TECH III | 11/6/1995 | | | | | |
| | 51 | ASSEMBLY ASSOC II | 11/6/1995 | REDACTED | | | REDACTED | | |
| | 47 | ASSEMBLY ASSOC III | 11/6/1995 | | | | | |
| | 51 | ASSEMBLY ASSOC III | 12/1/1995 | | | | | |
| | 52 | ASSEMBLY ASSOC II | 12/1/1995 | | | | | |
| REDACTED | 46 | FORECAST/SCHED II | 12/1/1995 | | | | | |
| | 56 | MAINT 7 CALIB MECHANIC | 12/1/1995 | | | | | |
| | 46 | MFG TECH III | 12/1/1995 | | | | | |
| | 54 | ASSEMBLY ASSOC II | 12/1/1995 | | | | | |
| | 48 | MFG TECH III | 12/1/1995 | | | | | |
| | 50 | ASSEMBLY ASSOC III | 12/1/1995 | | | | | |
| | 48 | ASSEMBLY ASSOC II | 12/1/1995 | | | | | |
| | 51 | SECURITY OFFICER II | 12/1/1995 | | | | | |
| | 44 | AREA COORD II | 12/1/1995 | | | | | |
| | 51 | MFG TECH III | 12/1/1995 | | | | | |
| | 47 | ASSEMBLY ASSOC III | 12/1/1995 | | | | | |
| | 36 | MFG TECH III | 12/1/1995 | | | | | |
| | 50 | ASSEMBLY ASSOC III | 12/1/1995 | | | | | |
| | 28 | SECURITY OFFICER I | 12/1/1995 | | | | | |
| | 36 | MFG MGR II | 12/1/1995 | | | | | |
| | 39 | SECRETARY III | 12/1/1995 | | | | | |
| | 61 | MECHANICAL ASSEMBLER | 12/1/1995 | | | | | |
| | 49 | DIST ASSOC II | 12/1/1995 | | | | | |
| | 48 | SECURITY OFFICER I | 12/1/1995 | | | | | |
| | 36 | SECURITY OFFICER II | 12/1/1995 | | | | | |
| | 48 | MFG MATERIALS III | 12/1/1995 | | | | | |
| | 50 | AREA COORD III | 12/1/1995 | | | | | |
| | 37 | Area Coordinator II | 12/1/1995 | | | | | |
| | 46 | MFG TECH III | 12/1/1995 | | | | | |
| | 51 | PROCESS ASSOC II | 12/1/1995 | | | | | |
| | 50 | PROCESS ASSOC I | 12/1/1995 | | | | | |

# EXHIBIT B

# Description of Eligibility Factors, Decisional Unit and Corresponding Demographic Data

This workforce reduction was necessary in order for Bull to reduce salary, general and administrative (SG&A) costs. All employees in the decisional unit(s) affected by this workforce reduction are eligible for (i.e., may be subject to) layoff. Severance pay eligibility is governed by Bull's Severance Pay Plan (the "Plan") and its corresponding Summary Plan Description (SPD).

1. The following is a description of the class, unit or group of employees covered by the Plan which Bull has offered Employee:

| | |
|---|---|
| Organization Name: | Manufacturing |
| Decisional Unit Name: | Manufacturing |
| Notification Date: | December 16, 1994 |

2. The following employees, in this decisional unit, are affected by this workforce reduction (although some may not be eligible for participation in the Plan):

| Title | Age |
|---|---|
| FP & A II | 57 |
| MFG MATERIALS III | 70 |
| MFG MATERIALS II | 51 |
| ASSEMBLY ASSOCIATE II | 59 |
| PROCESS ASSOC I | 55 |
| ASSEMBLY ASSOC I | 51 |
| MFG TECH III | 57 |
| AREA COORD II | 60 |
| ASSEMBLY ASSOCIATE II | 56 |
| ASSEMBLY ASSOC II | 55 |
| ASSEMBLY ASSOC II | 46 |
| DIST ASSOC II | 50 |
| MFG TECH III | 57 |
| FORECAST/SCHED III | 47 |
| PROCESS ASSOC II | 50 |
| COMPUTER ENG II | 52 |
| MFG TECH II | 49 |

BULL/SB 0846

1

2. The following employees, in this decisional unit, are affected by this workforce reduction (although some may not be eligible for participation in the Plan): (Continued)

| Title | Age |
|-------|-----|
| ASSEMBLY ASSOC II | 48 |
| ASSEMBLY ASSOC III | 46 |
| MFG MGR III | 58 |
| MFG MATERIALS I | 47 |
| FORECAST/SCHED III | 45 |
| SECURITY OFFICER III | 43 |
| FINANCE MANAGER II | 50 |
| MFG TECH III | 48 |
| MFG TECH III | 48 |
| MFG MATERIALS II | 56 |
| PROGRAM MANAGER II | 51 |
| MFG TECH III | 38 |
| MFG TECH II | 46 |
| SECRETARY III | 47 |
| MFG MATERIALS II | 56 |
| FORECAST/SCHEDULER II | 57 |
| MFG MANAGER III | 55 |
| MFG TECH II | 44 |
| ASSEMBLY ASSOC II | 52 |
| ENG ENVIRON III | 49 |
| ACCOUNTANT I | 29 |
| SECRETARY III | 48 |
| PROGRAM MANAGER II | 28 |
| SECURITY OFFICER I | 42 |
| MFG TECH III | 55 |
| PROGRAM MANAGER II | 25 |
| SECURITY OFFICER I | 51 |
| MFG MATERIALS III | 58 |
| MFG TECH III | 34 |
| ENG QUALITY II | 32 |
| QUALITY MGMT CONSLT | 56 |
| TECH SERVICES II | 55 |
| SECRETARY II | 29 |

BULL/SB 0847

3. The following employees, in this decisional unit, are not affected by this workforce reduction:

| Title | Age |
|---|---|
| FIN PLNG ANALYST III | 55 |
| MFG MGR I | 55 |
| PROCESS ASSOC II | 54 |
| PROCUREMENT SRVC DIR | 60 |
| FORECAST/SCHED III | 53 |
| PROCESS ASSOC I | 61 |
| PROCESS ASSOC II | 63 |
| MFG MGR III | 53 |
| ENG QUALITY II | 58 |
| ENG TEST IV | 55 |
| ENG QUALITY III | 59 |
| MFG MGR III | 59 |
| DRIVER I | 54 |
| PROCESS ASSOC II | 55 |
| AREA COORD II | 52 |
| MFG TECH II | 52 |
| ASSEMBLY ASSOC II | 51 |
| ASSEMBLY ASSOC II | 55 |
| PROCESS LEADER | 52 |
| PROCESS ASSOC II | 52 |
| ASSEMBLY ASSOC II | 51 |
| DIST ASSOC II | 53 |
| MFG TECH II | 50 |
| ASSEMBLY ASSOC II | 46 |
| ASSEMBLY ASSOC II | 54 |
| ASSEMBLY ASSOC II | 53 |
| PROCESS ASSOC II-N | 51 |
| MFG TECH II | 60 |
| MFG MATERIALS II | 53 |
| ASSEMBLY ASSOC III | 54 |
| ACCOUNTANT IV | 52 |
| UNKNOWN JOB CODE | 51 |
| ENG TEST III | 53 |
| UNCLASSIFIED EXEMPT | 53 |
| FIN PLNG ANALYST II | 57 |
| NEW PROD & TECH DIR | 58 |
| MFG MGR I | 51 |
| ASSEMBLY ASSOC II | 53 |
| PROGRAM MANAGER III | 54 |
| ASSEMBLY ASSOC II | 55 |
| MFG TECH III | 53 |
| PROCESS ASSOC II | 56 |

BULL/SB 0848

3.  **The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)**

| Title | Age |
|---|---|
| MFG MGR II | 52 |
| PROCESS ASSOC I | 53 |
| DIST ASSOC II | 50 |
| PROGRAM MANAGER III | 51 |
| MFG MGR I | 49 |
| PROCESS ASSOC II | 61 |
| DIST ASSOC II | 54 |
| MFG MGR III | 50 |
| ENG TEST IV | 55 |
| DRIVER I | 58 |
| PROCESS ASSOC II | 53 |
| MFG TECH II | 50 |
| MFG MATERIALS III | 49 |
| PROCESS ASSOC III | 51 |
| PROCESS ASSOC III | 61 |
| MFG MGR III | 57 |
| LOCATION DIR LAW FAC | 55 |
| ENG TEST II | 50 |
| MFG MATERIALS II | 46 |
| ASSEMBLY ASSOC II | 44 |
| ASSEMBLY ASSOC I | 60 |
| ASSEMBLY ASSOC II-N | 53 |
| PROCESS ASSOC I | 48 |
| DIST ASSOC I | 56 |
| PROCESS ASSOC I | 44 |
| PROCESS ASSOC II | 52 |
| PROCESS ASSOC I | 49 |
| ASSEMBLY ASSOC I | 56 |
| PROCESS ASSOC I | 56 |
| ASSEMBLY ASSOC I | 48 |
| DIST ASSOC I | 45 |
| PROCESS ASSOC I | 55 |
| ASSEMBLY ASSOC II | 43 |
| MFG MGR I | 50 |
| PROCESS ASSOC II | 53 |
| ENG TEST III | 49 |
| ACCOUNTANT III | 57 |
| ASSEMBLY ASSOC III | 49 |
| ASSEMBLY ASSOC III | 52 |
| ASSEMBLY ASSOC II | 50 |
| MFG MATERIALS II | 52 |
| AREA COORD III | 53 |

BULL/SB 0849

4

3.    The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|---|---|
| ASSEMBLY ASSOC II | 53 |
| MFG TECH III | 51 |
| MFG TECH III | 52 |
| ASSEMBLY ASSOC II | 49 |
| ENG PRODUCTION II | 50 |
| ASSEMBLY ASSOC II | 47 |
| ENG QUALITY III | 59 |
| MFG TECH II | 52 |
| AREA COORD II | 48 |
| MFG TECH II | 48 |
| MFG TECH II | 54 |
| ASSEMBLY ASSOC III | 46 |
| ASSEMBLY ASSOC III | 46 |
| PROCESS ASSOC II | 50 |
| ASSEMBLY ASSOC II | 47 |
| AREA COORD III | 48 |
| ASSEMBLY ASSOC II | 52 |
| ASSEMBLY ASSOC II | 50 |
| ASSEMBLY ASSOC II | 50 |
| ASSEMBLY ASSOC II | 55 |
| ASSEMBLY ASSOC II | 49 |
| ASSEMBLY ASSOC II | 57 |
| PROCESS ASSOC I | 52 |
| MFG MATERIALS III | 47 |
| MFG TECH II | 51 |
| ENG QUALITY III | 50 |
| ASSEMBLY ASSOC II | 50 |
| PROCESS ASSOC I | 56 |
| ENG TEST III | 47 |
| MFG TECH III | 39 |
| SECRETARY III | 51 |
| FINANCE MANAGER IV | 52 |
| ACCOUNTANT II | 47 |
| FINANCE ASSOC II | 46 |
| FINANCE MANAGER IV | 34 |
| PROCESS ASSOC II | 50 |
| MFG TECH II | 51 |
| ACCOUNTANT II | 49 |
| DIST ASSOC II | 49 |
| COMPUTER ENG II | 46 |
| ENG TEST IV | 54 |
| MFG MGR II | 47 |

BULL/SB 0850

3. **The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)**

| Title | Age |
|---|---|
| PROCESS ASSOC II | 49 |
| PROCESS ASSOC I | 52 |
| PROCESS ASSOC II | 47 |
| ENG PRODUCTION IV | 51 |
| PROCESS ASSOC II-N | 46 |
| PROCESS ASSOC II | 52 |
| MFG TECH II | 51 |
| SECRETARY III | 47 |
| MFG ADMIN DIRECTOR | 48 |
| PROCESS ASSOC I | 58 |
| PROCESS ASSOC II | 54 |
| PROCESS ASSOC III | 46 |
| MFG MGR I | 56 |
| MFG TECH II | 52 |
| MFG MGR II | 52 |
| PROCESS ASSOC I | 56 |
| PROCESS ASSOC I | 64 |
| MFG TECH III | 46 |
| PROCESS ASSOC II-N | 57 |
| PROCESS ASSOC I | 50 |
| ENG PRODUCTION II | 48 |
| ENG TEST IV | 50 |
| PROCESS ASSOC III | 50 |
| PROCESS ASSOC II-N | 46 |
| PROCESS ASSOC II | 45 |
| PROCESS ASSOC I | 55 |
| PROCESS ASSOC II-N | 53 |
| PROCESS ASSOC II | 45 |
| PROCESS ASSOC II | 48 |
| MFG MGR II | 47 |
| MFG TECH II | 49 |
| ENG PRODUCTION IV | 62 |
| PROCESS ASSOC I | 53 |
| COMPUTER ENG II | 46 |
| PROCESS ASSOC I | 54 |
| SECRETARY II | 43 |
| PROCESS ASSOC I | 44 |
| MFG MGR III | 50 |
| DIST ASSOC II | 48 |
| PROCESS ASSOC II | 64 |
| DIST ASSOC I | 45 |
| PROCESS ASSOC I | 53 |

BULL/SB 0851

3. The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| ENG TEST III | 45 |
| DIST ASSOC I | 60 |
| PROCESS ASSOC I | 42 |
| PROCESS ASSOC I | 45 |
| ASSEMBLY ASSOC I | 42 |
| FORECAST/SCHED II | 51 |
| PROCESS ASSOC II | 50 |
| ASSEMBLY ASSOC II | 40 |
| DIST ASSOC II | 47 |
| MFG MATERIALS II | 44 |
| PROCESS ASSOC II | 56 |
| PROCESS ASSOC I | 56 |
| DIST ASSOC II | 65 |
| PROCESS ASSOC I | 58 |
| ASSEMBLY ASSOC II | 47 |
| ASSEMBLY ASSOC III | 52 |
| ASSEMBLY ASSOC II | 52 |
| ASSEMBLY ASSOC III | 47 |
| MFG TECH III | 50 |
| MFG TECH II | 51 |
| MFG TECH III | 47 |
| ENG INDUSTRIAL II | 61 |
| ASSEMBLY ASSOC II | 46 |
| DIST ASSOC II | 48 |
| ASSEMBLY ASSOC III | 48 |
| ASSEMBLY ASSOC III | 49 |
| DIST ASSOC II | 52 |
| ASSEMBLY ASSOC III | 45 |
| MFG MGR III | 52 |
| ASSEMBLY ASSOC II | 60 |
| ASSEMBLY ASSOC III | 47 |
| ASSEMBLY ASSOC II | 53 |
| ASSEMBLY ASSOC II | 51 |
| MFG TECH II | 49 |
| AREA COORD II | 51 |
| ASSEMBLY ASSOC III | 50 |
| ASSEMBLY ASSOC III | 59 |
| PROCESS ASSOC I | 61 |
| ASSEMBLY ASSOC II | 57 |
| MFG TECH III | 45 |
| ASSEMBLY ASSOC II | 48 |
| MFG TECH III | 49 |

BULL/SB 0852

3.  The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| ENG PACKAGING III | 54 |
| MFG TECH III | 51 |
| FORECAST/SCHED III | 44 |
| AREA COORD II | 43 |
| ASSEMBLY ASSOC I | 52 |
| PROCESS ASSOC I | 48 |
| MFG TECH II | 57 |
| ASSEMBLY ASSOC II | 45 |
| ASSEMBLY ASSOC I | 46 |
| ENG TEST III | 50 |
| UNKNOWN JOB CODE | 57 |
| ENG TEST III | 51 |
| ACCOUNTANT I | 42 |
| FINANCE MANAGER I | 48 |
| MIS BUS ANALYST II | 40 |
| ASSEMBLY ASSOC I | 43 |
| MFG MATERIALS III | 44 |
| MFG TECH III | 48 |
| DIST ASSOC I | 52 |
| PROCESS ASSOC I | 55 |
| MFG TECH II | 47 |
| ASSEMBLY ASSOC I | 55 |
| PROCESS ASSOC I | 44 |
| MFG TECH III | 47 |
| DIST ASSOC I | 59 |
| PROCESS ASSOC I | 41 |
| PROCESS ASSOC I | 60 |
| ASSEMBLY ASSOC I | 40 |
| MFG TECH II | 41 |
| PROCESS ASSOC I | 53 |
| MFG MATERIALS II | 47 |
| ASSEMBLY ASSOC II | 40 |
| PROCESS ASSOC II | 56 |
| MFG MGR II | 44 |
| MFG MGR III | 49 |
| PROCESS ASSOC I | 44 |
| ENG TEST III | 49 |
| PROCESS ASSOC II | 53 |
| PROCESS ASSOC I | 55 |
| ASSEMBLY ASSOC I | 62 |
| MFG MGR II | 49 |
| ASSEMBLY ASSOC I | 49 |

BULL/SB 0853

3. The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|---|---|
| SECRETARY III | 40 |
| DIST ASSOC I | 40 |
| BUS PLNG ADVISOR | 54 |
| MFG MATERIALS II | 58 |
| PROCESS ASSOC I | 47 |
| PROCESS ASSOC II | 53 |
| DIST ASSOC II | 37 |
| PROCESS ASSOC I | 43 |
| MFG TECH II | 37 |
| MFG TECH II | 50 |
| MFG MATERIALS III | 46 |
| PROCESS ASSOC II | 46 |
| DIST ASSOC II | 53 |
| MFG TECH II | 40 |
| PROCESS ASSOC I | 58 |
| ENG QUALITY III | 44 |
| ENG TECHNOLOGY III | 42 |
| MFG TECH II | 56 |
| MFG TECH II | 51 |
| DIST ASSOC II | 43 |
| ENG TEST II | 47 |
| DIST ASSOC I | 41 |
| PROCESS ASSOC I | 39 |
| PROCESS ASSOC II | 48 |
| ENG PRODUCTION IV | 46 |
| MFG MATERIALS II | 45 |
| PROCESS ASSOC III-N | 39 |
| PROCESS ASSOC II | 37 |
| PROCESS ASSOC II | 43 |
| PROCESS ASSOC I | 42 |
| PROCESS ASSOC III | 41 |
| PROCESS ASSOC I | 47 |
| MFG TECH III | 41 |
| ENG TEST III | 47 |
| PROCESS ASSOC I | 64 |
| MFG TECH III | 52 |
| MFG TECH II | 43 |
| ASSEMBLY ASSOC II | 43 |
| PROCESS ASSOC I | 51 |
| DIST ASSOC I | 46 |
| MFG MATERIALS III | 40 |
| ASSEMBLY ASSOC II-N | 35 |

BULL/SB 0854

3.   The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| MFG TECH II | 42 |
| ENG CHEMICAL III | 56 |
| ENG PRODUCTION IV | 52 |
| PROCESS ASSOC I | 57 |
| PROCESS ASSOC II | 50 |
| MFG MATERIALS II | 37 |
| MFG MGR II | 54 |
| SECRETARY III | 38 |
| MFG MGR III | 35 |
| DIST ASSOC I | 51 |
| SECRETARY II | 55 |
| PROCESS ASSOC I | 35 |
| PROCESS ASSOC I | 56 |
| PROCESS ASSOC I | 55 |
| ASSEMBLY ASSOC III | 57 |
| MFG MGR II | 38 |
| MFG MATERIALS III | 39 |
| PROCESS ASSOC II-N | 44 |
| PROCESS ASSOC I | 65 |
| PROCESS ASSOC I | 61 |
| PROCESS ASSOC II | 34 |
| MFG TECH I | 55 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 35 |
| PROCESS ASSOC I | 35 |
| PROCESS ASSOC II | 54 |
| ACCOUNTANT II | 45 |
| PROGRAM MANAGER III | 39 |
| MFG MATERIALS III | 48 |
| ENG PRODUCTION III | 52 |
| MFG TECH II | 37 |
| DRIVER II | 44 |
| DRIVER II | 42 |
| DIRECTOR CORP MATERIALS | 43 |
| PROCESS ASSOC I | 50 |
| PROCESS ASSOC I | 38 |
| PROCESS ASSOC II | 50 |
| PROCESS ASSOC I | 49 |
| AREA COORD II | 36 |
| PROCESS ASSOC I | 53 |
| PROCESS ASSOC I | 42 |
| ENG INDUSTRIAL III | 37 |

BULL/SB 0855

3.    The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| MFG TECH III | 45 |
| PROCESS ASSOC I | 45 |
| PROCESS ASSOC II | 50 |
| PROCESS ASSOC II | 37 |
| PROCESS ASSOC I | 57 |
| MFG TECH II | 45 |
| PROCESS ASSOC II | 51 |
| PROCESS ASSOC I | 53 |
| MFG TECH III | 37 |
| PROCESS ASSOC II | 44 |
| PROCESS ASSOC II | 53 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC II | 40 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC I | 55 |
| PROCESS ASSOC II | 44 |
| PROCESS ASSOC I | 36 |
| PROCESS ASSOC II | 55 |
| PROCESS ASSOC II | 41 |
| MFG TECH I | 48 |
| MFG TECH II | 48 |
| PROCESS ASSOC II | 64 |
| DIST ASSOC II | 48 |
| PROCESS ASSOC I | 60 |
| PROCESS ASSOC I | 43 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC I | 57 |
| PROCESS ASSOC II | 50 |
| MFG TRAINING ADMIN | 43 |
| PROCESS ASSOC I | 36 |
| MFG TECH II | 41 |
| MFG MATERIALS I | 35 |
| PROCESS ASSOC II-N | 57 |
| MFG TECH III | 39 |
| PROCESS ASSOC II | 41 |
| PROCESS ASSOC I | 45 |
| MFG MGR III | 44 |
| MFG TECH III | 45 |
| ENG TEST II | 36 |
| PROCESS ASSOC III-N | 40 |
| PROCESS ASSOC I | 62 |
| PROCESS ASSOC I | 46 |

BULL/SB 0856

3.    The following employees, in this decisional unit, are not affected by this workforce reduction:  (Continued)

| Title | Age |
| --- | --- |
| MFG MATERIALS III | 38 |
| PROCESS ASSOC I | 54 |
| ENVIRON OPERATOR I | 39 |
| PROCESS ASSOC I | 61 |
| MFG TECH II | 37 |
| ENG INDUSTRIAL IV | 36 |
| MFG TECH II | 37 |
| ENG TEST II | 41 |
| MFG MATERIALS III | 57 |
| MFG TECH II | 50 |
| PROCESS ASSOC II | 39 |
| PROCESS ASSOC II | 55 |
| MFG TECH II | 35 |
| PROCESS ASSOC I | 37 |
| PROCESS ASSOC I | 57 |
| PROCESS ASSOC I | 54 |
| PROCESS ASSOC II-N | 39 |
| PROCESS ASSOC I | 47 |
| PROCESS ASSOC I | 48 |
| MFG MGR I | 35 |
| PROCESS ASSOC II | 37 |
| MFG TECH II | 40 |
| PROCESS ASSOC I | 42 |
| DIST ASSOC II | 35 |
| ACCOUNTANT III | 34 |
| PROCESS ASSOC II-N | 64 |
| MFG TECH III | 37 |
| PROCESS ASSOC III-N | 36 |
| MFG TECH III | 41 |
| ASSEMBLY ASSOC II-N | 38 |
| PROCESS ASSOC II-N | 67 |
| PROCESS ASSOC I | 52 |
| AREA COORD I | 38 |
| PROCESS ASSOC II-N | 35 |
| MFG TECH II | 41 |
| MFG TECH III | 41 |
| MFG TECH II | 36 |
| MFG TECH III | 47 |
| PROCESS ASSOC II | 41 |
| PROCESS ASSOC I | 48 |
| PROCESS ASSOC II | 44 |
| PROCESS ASSOC II-N | 47 |

BULL/SB 0857

3.   The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|-------|-----|
| ENG TEST II | 35 |
| MFG TECH III | 37 |
| FORECAST/SCHED II | 46 |
| ENG INDUSTRIAL II | 35 |
| PROCESS ASSOC I | 33 |
| PROCESS ASSOC I | 39 |
| MFG TECH III | 43 |
| PROCESS ASSOC II | 35 |
| MFG TECH I | 52 |
| MFG TECH I | 39 |
| PROCESS ASSOC II | 35 |
| PROCESS ASSOC I | 51 |
| PROCESS ASSOC III-N | 37 |
| MFG MATERIALS II | 36 |
| AREA COORD II | 38 |
| PROCESS ASSOC I | 43 |
| PROCESS ASSOC II | 36 |
| PROCESS ASSOC I | 37 |
| MFG MATERIALS II | 46 |
| DIST ASSOC II | 49 |
| MFG MATERIALS II | 43 |
| ENG CHEMICAL II | 55 |
| PROCESS ASSOC II | 51 |
| PROCESS ASSOC I | 56 |
| PROCESS ASSOC I-N | 56 |
| PROCESS ASSOC I | 36 |
| PROCESS ASSOC I | 60 |
| MFG MGR II | 33 |
| PROCESS ASSOC II | 38 |
| PROCESS ASSOC I | 39 |
| PROCESS ASSOC I | 44 |
| PROCESS ASSOC II | 35 |
| MFG TECH II | 40 |
| PROCESS ASSOC II | 42 |
| PROCESS ASSOC II | 40 |
| PROCESS ASSOC II-N | 39 |
| MFG TECH II | 38 |
| PROCESS ASSOC II-N | 39 |
| PROCESS ASSOC II | 34 |
| PROCESS ASSOC I | 52 |
| PROCESS ASSOC I | 39 |
| PROCESS ASSOC I | 35 |

BULL/SB 0858

3.    The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| ENG QUALITY IV | 41 |
| PROCESS ASSOC I | 39 |
| PROCESS ASSOC II-N | 44 |
| PROCESS ASSOC I | 45 |
| PROCESS ASSOC I | 52 |
| PROCESS ASSOC II | 38 |
| PROCESS ASSOC I | 33 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 61 |
| PROCESS ASSOC I | 38 |
| MFG TECH II | 44 |
| PROCESS ASSOC I | 55 |
| PROCESS ASSOC I | 58 |
| PROCESS ASSOC II-N | 34 |
| MFG MATERIALS II | 41 |
| ENG PRODUCTION III | 38 |
| MFG TECH III | 34 |
| PROCESS ASSOC I | 54 |
| PROCESS ASSOC II | 55 |
| ENG TEST II | 37 |
| PROCESS ASSOC I | 43 |
| PROCESS ASSOC I | 44 |
| MFG TECH III | 52 |
| MFG TECH III | 50 |
| MFG TECH I | 45 |
| PROCESS ASSOC II-N | 35 |
| MFG TECH I | 46 |
| PROCESS ASSOC I | 59 |
| PROCESS ASSOC I | 57 |
| PROCESS ASSOC I | 36 |
| MFG TECH III | 42 |
| PROCESS ASSOC I | 46 |
| MFG TECH III | 35 |
| PROCESS ASSOC I | 53 |
| MFG TECH I | 35 |
| MFG TECH II | 42 |
| PROCESS ASSOC I | 47 |
| MFG MATERIALS II | 37 |
| PROCESS ASSOC I | 42 |
| MFG MATERIALS III | 38 |
| MFG MGR II | 39 |
| MFG TECH III | 37 |

BULL/SB 0859

3. The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| PROCESS ASSOC I | 41 |
| MFG TECH II | 38 |
| MFG TECH II | 63 |
| PROCESS ASSOC III | 42 |
| MFG TECH II | 34 |
| MFG TECH II | 48 |
| PROCESS ASSOC I | 60 |
| ENG TECHNOLOGY IV | 60 |
| PROCESS ASSOC II | 48 |
| PROGRAM MANAGER II | 35 |
| MFG TECH III | 45 |
| AREA COORD III | 34 |
| ASSEMBLY ASSOC III | 35 |
| PROCESS ASSOC I | 43 |
| MFG TECH III | 47 |
| MFG TECH II | 57 |
| MFG TECH I | 42 |
| PROCESS ASSOC I | 37 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC II | 38 |
| MFG TECH I | 41 |
| PROCESS ASSOC I | 55 |
| MFG TECH I | 38 |
| MFG TECH II | 41 |
| PROCESS ASSOC II | 39 |
| PROCESS ASSOC I | 54 |
| MFG TECH II | 34 |
| MFG TECH II | 34 |
| MFG TECH II | 38 |
| MFG TECH II | 35 |
| MFG TECH II | 36 |
| MIS BUS ANALYST III | 40 |
| ENG INDUSTRIAL IV | 42 |
| MFG TECH II | 42 |
| ACCOUNTANT II | 35 |
| ENG TECHNOLOGY IV | 63 |
| HR DIR MANUFACTURING | 46 |
| ACCOUNTANT II | 34 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC I | 53 |
| PROCESS ASSOC II | 63 |
| SECRETARY II | 29 |

BULL/SB 0860

3.   The following employees in this decisional unit, are not affected by this
     workforce reduction: (Continued)

| Title | Age |
|---|---|
| PROCESS ASSOC I | 33 |
| PROCESS ASSOC I | 62 |
| UNKNOWN JOB CODE | 39 |
| ENG QUALITY II | 32 |
| MFG TECH II | 34 |
| PROCESS ASSOC III-N | 34 |
| PROCESS ASSOC II | 49 |
| PROCESS ASSOC I | 62 |
| ACCOUNTANT II | 61 |
| MFG MATERIALS III | 51 |
| ENG TECHNOLOGY IV | 60 |
| PROCESS ASSOC I | 57 |
| ENG PRODUCTION III | 58 |
| ENG TEST III | 51 |
| AREA COORD III | 49 |
| MFG TECH III | 54 |
| MFG MATERIALS II | 48 |
| FINANCE MANAGER IV | 56 |
| ENG PRODUCTION IV | 49 |
| FORECAST/SCHED II | 54 |
| MFG TECH III | 52 |
| ENG TEST III | 55 |
| MFG TECH III | 54 |
| ENG TEST II | 48 |
| ACCOUNTANT II | 55 |
| PROCESS ASSOC II | 49 |
| MFG TECH II | 46 |
| PROCESS ASSOC II | 52 |
| ENG TECHNOLOGY III | 54 |
| MFG TECH III | 35 |
| MFG TECH III | 41 |
| MFG TECH III | 35 |
| SECRETARY IV | 55 |
| MFG TECH II | 56 |
| MFG TECH II | 63 |
| MFG TECH II | 58 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 30 |
| MIS BUS ANALYST III | 39 |
| ACCOUNTANT I | 40 |
| MFG MGR II | 48 |
| PROCESS ASSOC II-N | 38 |

BULL/SB 0861

3.    The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|---|---|
| PROCESS ASSOC II | 48 |
| PROCESS ASSOC II | 54 |
| MFG TECH III | 31 |
| PROCESS ASSOC II | 60 |
| MFG MATERIALS III | 50 |
| MFG TECH III | 30 |
| MFG TECH II | 36 |
| ENG PRODUCTION II | 38 |
| MFG TECH II | 26 |
| MFG MGR II | 30 |
| MFG TECH II | 25 |
| ENG PRODUCTION III | 29 |
| MFG MGR II | 31 |
| FIN PLNG ANALYST III | 32 |
| MFG TECH II | 30 |
| ENG QUALITY III | 29 |
| PROCESS ASSOC II-N | 36 |
| MFG TECH I | 39 |
| PROCESS ASSOC I | 27 |
| PROCESS ASSOC I | 40 |
| ENG PRODUCTION II | 32 |
| MFG TECH III | 45 |
| PROCESS ASSOC I | 60 |
| PROCESS ASSOC I | 38 |
| PROCESS ASSOC II | 26 |
| PROCESS ASSOC I | 42 |
| PROCESS ASSOC I | 40 |
| MFG TECH I | 32 |
| PROCESS ASSOC II | 44 |
| MFG TECH II | 47 |
| MFG TECH II | 33 |
| ENG PRODUCTION II | 31 |
| MFG TECH II | 42 |
| MFG TECH II | 33 |
| MFG TECH I | 40 |
| SECRETARY III | 38 |
| PROCESS ASSOC I | 49 |
| FINANCE ASSOC III | 46 |
| ENG TEST III | 50 |
| PROCESS ASSOC II-N | 30 |
| PROCESS ASSOC I | 35 |
| ENG PRODUCTION II | 61 |

BULL/SB 0862

3.   The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|-------|-----|
| MFG TECH II | 29 |
| MFG TECH I | 40 |
| MFG TECH II | 45 |
| MFG TECH II | 35 |
| MFG TECH II | 35 |
| ACCOUNTANT II | 34 |
| MFG MGR II | 33 |
| ENG QUALITY II | 34 |
| ENG TECHNOLOGY III | 28 |
| MFG MGR I | 27 |
| MFG MATERIALS III | 39 |
| MFG TECH II | 31 |
| MFG TECH II | 31 |
| PROCESS ASSOC II-N | 53 |
| PROCESS ASSOC II-N | 34 |
| PROCESS ASSOC I | 56 |
| PROCESS ASSOC I | 26 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 35 |
| PROCESS ASSOC I | 53 |
| PROCESS ASSOC II | 28 |
| PROCESS ASSOC II | 40 |
| PROCESS ASSOC I | 40 |
| PROCESS ASSOC III-N | 31 |
| PROCESS ASSOC I | 37 |
| PROCESS ASSOC II-N | 55 |
| PROCESS ASSOC I | 38 |
| PROCESS ASSOC II-N | 40 |
| PROCESS ASSOC II | 35 |
| PROCESS ASSOC I | 54 |
| PROCESS ASSOC I | 36 |
| PROCESS ASSOC I | 41 |
| PROCESS ASSOC II | 31 |
| PROCESS ASSOC I | 25 |
| PROCESS ASSOC I | 28 |
| PROCESS ASSOC II | 26 |
| PROCESS ASSOC I | 23 |
| PROCESS ASSOC I | 30 |
| PROCESS ASSOC I | 56 |
| PROCESS ASSOC II | 34 |
| PROCESS ASSOC I | 39 |

BULL/SB 0863

3.  The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
| --- | --- |
| PROCESS ASSOC I | 30 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 31 |
| PROCESS ASSOC I | 22 |
| PROCESS ASSOC II | 38 |
| PROCESS ASSOC III-N | 42 |
| PROCESS ASSOC III-N | 36 |
| ENG PRODUCTION II | 29 |
| PROCESS ASSOC II | 28 |
| PROCESS ASSOC II-N | 36 |
| PROCESS ASSOC II | 23 |
| SECRETARY II | 49 |
| MFG MATERIALS II | 41 |
| ENVIRON OPERATOR II | 28 |
| PROGRAM MANAGER II | 32 |
| SECRETARY III | 34 |
| PROCESS ASSOC II | 26 |
| PROCESS ASSOC II | 28 |
| ENG ENVIRON III | 37 |
| ENG PRODUCTION II | 37 |
| ENG TECHNOLOGY II | 36 |
| PROCESS ASSOC I | 23 |
| PROCESS ASSOC III | 31 |
| PROCESS ASSOC II-N | 38 |
| PROCESS ASSOC III | 36 |
| MFG TECH II | 42 |
| ENVIRON OPERATOR II | 44 |
| PROCESS ASSOC II-N | 34 |
| PROCESS ASSOC II | 57 |
| PROGRAM MANAGER II | 32 |
| MFG MGR I | 27 |
| FORECAST/SCHED III | 53 |
| MFG TECH III | 45 |
| PROCESS ASSOC I | 52 |
| PROCESS ASSOC I | 54 |
| SECRETARY III | 52 |
| PROCESS ASSOC II-N | 41 |
| PROCESS ASSOC II-N | 34 |
| ENG PRODUCTION II | 29 |
| PROCESS ASSOC III-N | 30 |
| PROCESS ASSOC I | 23 |
| MFG MGR II | 51 |

BULL/SB 0864

3.   The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|-------|-----|
| PROCESS ASSOC I | 48 |
| PROCESS ASSOC I | 33 |
| PROCESS ASSOC II-N | 28 |
| PROCESS ASSOC II-N | 35 |
| PROCESS ASSOC II | 37 |
| PROCESS ASSOC II | 48 |
| PROCESS ASSOC II-N | 39 |
| PROCESS ASSOC II | 36 |
| PROCESS ASSOC II-N | 30 |
| PROCESS ASSOC I | 32 |
| PROCESS ASSOC I | 30 |
| PROCESS ASSOC I | 41 |
| PROCESS ASSOC I | 47 |
| PROCESS ASSOC II-N | 47 |
| PROCESS ASSOC I | 43 |
| PROCESS ASSOC I | 47 |
| MFG TECH II | 31 |
| MFG TECH II | 39 |
| PROCESS ASSOC II-N | 39 |
| PROCESS ASSOC I | 28 |
| PROCESS ASSOC I | 36 |
| PROCESS ASSOC I | 46 |
| PROCESS ASSOC I | 26 |
| PROCESS ASSOC I | 44 |
| PROCESS ASSOC I | 38 |
| PROCESS ASSOC II-N | 26 |
| PROCESS ASSOC II-N | 31 |
| PROCESS ASSOC III-N | 32 |
| ENG PRODUCTION II | 34 |
| ENG PRODUCTION II | 24 |
| PROCESS ASSOC II-N | 25 |
| PROCESS ASSOC II-N | 42 |
| ENG PRODUCTION II | 28 |
| MFG MGR I | 40 |
| PROCESS ASSOC I | 42 |
| PROCESS ASSOC I | 45 |
| PROCESS ASSOC I | 24 |
| PROCESS ASSOC I | 48 |
| PROCESS ASSOC I | 34 |
| MFG TECH II | 51 |
| PROCESS ASSOC I | 43 |
| PROCESS ASSOC I | 36 |

BULL/SB 0865

3. The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|-------|-----|
| PROCESS ASSOC II | 33 |
| PROCESS ASSOC I | 28 |
| PROCESS ASSOC I | 44 |
| PROCESS ASSOC II-N | 39 |
| PROCESS ASSOC I | 47 |
| PROCESS ASSOC I | 36 |
| PROCESS ASSOC II-N | 27 |
| MFG TECH II | 29 |
| MFG TECH II | 27 |
| PROCESS ASSOC I-N | 26 |
| PROCESS ASSOC I-N | 27 |
| MFG TECH II | 44 |
| MFG SYSTEMS DIRECTOR | 42 |
| PROCESS ASSOC II | 30 |
| PROCESS ASSOC I-N | 26 |
| MMP | 42 |
| PROCESS ASSOC I-N | 43 |
| MFG TECH II | 31 |
| MFG TECH II | 30 |
| PROCESS ASSOC I-N | 43 |
| PROCESS ASSOC I-N | 32 |
| PROCESS ASSOC I-N | 37 |
| PROCESS ASSOC I-N | 37 |
| PROCESS ASSOC I-N | 28 |
| PROCESS ASSOC I-N | 32 |
| PROCESS ASSOC I-N | 41 |
| PROCESS ASSOC I-N | 38 |
| PROCESS ASSOC II | 38 |
| PROCESS ASSOC I-N | 36 |
| PROCESS ASSOC I-N | 35 |
| PROCESS ASSOC I-N | 44 |
| PROCESS ASSOC I-N | 29 |
| ENG TECHNOLOGY III | 51 |
| MFG MATERIALS II | 32 |
| SECRETARY II | 28 |
| ENG PRODUCTION II | 26 |
| MMP | 24 |
| ENVIRON OPERATOR II | 33 |
| MFG MGR II | 35 |
| MFG TECH II | 30 |
| PROCESS ASSOC II-N | 26 |
| ENG ENVIRON IV | 32 |

BULL/SB 0866

3. The following employees, in this decisional unit, are not affected by this workforce reduction: (Continued)

| Title | Age |
|---|---|
| PROCESS ASSOC II-N | 29 |
| MMP | 26 |
| DIRECTOR BRIGHTON FACIL | 54 |
| ENVIRON OPERATOR II | 41 |
| MMP | 23 |
| TEMPORARY EMP-EXEMPT | 43 |
| MFG TECH II | 32 |
| ENG PRODUCTION IV | 36 |
| MFG MGR I | 42 |
| MFG MGR I | 39 |
| SALES DIRECTOR – LMO | 49 |
| PROCESS ASSOC III | 43 |
| MFG MGR II | 41 |

BULL/SB 0867

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

STEPHEN BECKMAN                                       DOCKET NO. 03BEM01662

V.

BULL HN INFORMATION SYSTEMS INC.

### AFFIDAVIT OF CECILE WRIGHT

Now comes the Affiant and swears to the truth of the following:

1. I am currently the Vice President for Human Resources for Bull HN Information Systems Inc. ("Bull HN") and have held that position since May 1996. From 1992 until I became Vice President for Human Resources, I held positions of Compensation Manager and Manager of Compensation and Human Resources Information Systems. Throughout my various positions, I have been aware of, and involved with, the layoffs that have occurred at Bull HN.

2. Due to various economic pressures throughout the 1990s, Bull HN was forced to undertake drastic cost-cutting measures. As part of these cost-cutting measures, Bull HN laid off a tremendous number of people. On December 31, 1989, 8,902 people were employed by Bull HN in the U.S. This number decreased to 2,013 by December 31, 1995. In Massachusetts alone, 4,025 people were employed by Bull HN on December 31, 1989. The number of Massachusetts employees decreased to 1,037 by December 31, 1995.

3. Despite the tremendous number of layoffs, the average age of Bull HN's employees continued to increase. On December 31, 1989, the average age of all U.S. employees was 42.6. On December 31, 1995, the average age was 46.3. Among Massachusetts employees, the average age was 41.7 on December 31, 1989 and 45.2 on December 31, 1995.

4. During the times it implemented reductions in force, Bull HN had in place and followed detailed procedures to ensure that all layoffs were taken for legitimate, nondiscriminatory reasons. Whenever a manager needed to select employees for layoff, he or she followed Bull HN's Work Force Reduction Policy. This policy required managers to review the goals of his or her department, determine what employees had the skills necessary to meet the goals, and select for layoff those individuals whose skills did not match the needs of the department. If the individual selected was a member of a protected class, a Special Consideration Review was undertaken. During the Special Consideration Review, the decision to select the particular employee was reviewed by management, Human Resources, the Equal Employment Opportunity Manager, and Legal Counsel to ensure that the reasons for the selection were business related and nondiscriminatory.

5. In 1994, the year that Stephen Beckman was laid off, the Finance Department of the Manufacturing Division laid off twelve employees. The twelve employees selected for layoff were a fair representation of the department workforce. Although 75% of the laid off employees were over the age of forty and the average age of those employees was forty-four, 73% of the

BULL\SB 2768

employees retained by the department were over the age of forty and the average age of the retained employees was forty-six.

6. In connection with preparing for this Position Statement, I reviewed Mr. Beckman's personnel file archived at Bull HN.

7. As set forth in his employment records, Mr. Beckman was originally hired for the position of Accountant effective May 16, 1966. Over the next twenty-eight years, he held various finance positions. As of December, 1994, Mr. Beckman was employed as a Financial Planning Analyst II in the Finance Department of Bull's Manufacturing Division located in Lawrence, Massachusetts.

8. As explained in the Special Consideration Review of Mr. Beckman, upon his layoff, Mr. Beckman's duties were shifted to two retained employees, REDACTED    and  REDACTED
.  REDACTED   was a Financial Planning Analyst III who was fifty-five years old and who had been employed by Bull HN for thirty-two years.  REDACTED      was the Manager of the Financial Department of the Manufacturing Division who was fifty-two years old and who had been employed by Bull HN for twenty-eight years.

9. On June 14, 2001, I sent a form letter (example of which is attached hereto as Exhibit 1) to each former employee of Bull HN who had worked in Massachusetts and who had signed a general release and severance agreement with Bull HN between July 1, 1994 and July 31, 1998. Enclosed with each letter was a copy of the Memorandum and Order from the United States District Court (Gertner J.) in Commonwealth of Massachusetts v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134 (D. Mass. 2001) (attached hereto as Exhibit 2).

10. The list of former employees to whom I sent the form letter and accompanying Memorandum and Order is attached hereto as Exhibit 3. Mr. Beckman is included on this list. The address to which I sent Mr. Beckman's letter is listed as: 6867 Chimere Terrace, Boynton Beach, FL 33437. This letter was not returned to Bull HN.

Signed this _19th_ day of August, 2003 under the pains and penalties of perjury.

_Cecile Wright_
Cecile Wright

# EXHIBIT D

1

1                    UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF MASSACHUSETTS

3

4

5   * * * * * * * * * * * * * * * * *
    STEPHEN BECKMAN,                          *
6        Plaintiff                            *
                                              *
7   VS.                                       * CIVIL ACTION
                                              * NO. 03-cv-12567
8   BULL HN INFORMATION SYSTEM, INC.,         *
         Defendant                            *
9   * * * * * * * * * * * * * * *             *

10

11

12

13          DEPOSITION OF STEPHEN BECKMAN, called by the

14   Defendant, pursuant to Rules 26 and 30 of the Federal

15   Rules of Civil Procedure, before Ruth E. Hulke, Certified

16   Shorthand Reporter No. 114893 and Notary Public for the

17   Commonwealth of Massachusetts, at Wilmer, Cutler,

18   Pickering, Hale and Dorr, LLP, 60 State Street, Boston,

19   Massachusetts, on Thursday, December 16, 2004, commencing

20   at 12:00 p.m.

21

22

23

                    LEAVITT REPORTING, INC.

13

1        A.    No.

2        Q.    Have you ever testified at a trial?

3        A.    No.

4        Q.    What is your date of birth?

5        A.    7-8-37.

6        Q.    Safe me from having to do the math.  How old

7   are you now?

8        A.    I think it's -- I don't like to say.  I think

9   it's 67.

10        Q.    Do you remember what caused you to apply to

11   Honeywell?

12        A.    I went through an employment agency, so

13   whatever they were giving me, that was it.

14        Q.    And do you remember in what year you began to

15   work for Honeywell?

16        A.    I can't remember offhand, but it had to be

17   around '64, '65 time frame.

18        Q.    Were you working for a particular branch or

19   department or unit of Honeywell?

20        A.    Yes.  Brighton.

21        Q.    Was it a manufacturing facility?

22        A.    Yes, it was.

23        Q.    Could you describe for us in general terms what

1        Q.    Did you have any promotions after becoming the

2    supervisor of shipments?

3        A.    I became a supervisor in Framingham.

4        Q.    Was this while it was still Honeywell?

5        A.    They had bought this company.  And I had to go

6    over there and set up the shipment system there.

7        Q.    Were you still doing the same job

8    responsibilities --

9        A.    Basically.

10       Q.    -- as you described?  So you were still costing

11   the value of computer equipment and booking inventory

12   relief?

13       A.    Yes.

14       Q.    Anything else?

15       A.    Inventories.

16       Q.    Were you promoted at any other time while it

17   was still Honeywell?

18       A.    I think after that, sometime in between those

19   two I may have been promoted -- I can't remember.  All I

20   know is I worked for purchasing for a while.  I became

21   their accountant, and we set up commodity controls which

22   was assigning each part a different commodity code, and

23   we developed that system.  And I was the link between

1    purchasing and accounting setting standards, and that

2    lasted for a while.  I can't remember the time frame when

3    it was in there.  Then I think from Framingham I went to,

4    I think I went back to Brighton, and I had shipments and

5    labor, I was doing labor there.  Then I went to

6    Billerica, and now it was basically staff type person,

7    not supervisor.

8         Q.    In what area?

9         A.    Different level.  It became long-range plans.

10   First it was cost estimate.  Then we did, I went into the

11   long-range plans, and I stayed at that for quite a while.

12   Then eventually I was asked to go up to Lawrence and

13   handle the shipments and a new system they were

14   designing, MINX.

15        Q.    By that time was it Bull as opposed to

16   Honeywell?

17        A.    Oh, yeah.  Yeah.

18        Q.    Do you have a recollection of when that

19   transition occurred?

20        A.    They did so many things.  I mean, they bought

21   up different companies.  They bought up GE, computers,

22   and I can't remember whether that was part -- No, I think

23   it was still Honeywell at that time.  Then --

LEAVITT REPORTING, INC.

1          MS. EDGREN:  She just asked if you remember at

2    what point.

3          A.    I don't remember the dates.

4          Q.    Basically, once Bull acquired Honeywell, did

5    you just continue in your same capacity with the new

6    employer?

7          A.    Yeah.  It was just a different name.

8          Q.    With regard to the positions that you held at

9    Honeywell and then at Bull, were they all in the

10   accounting field?

11         A.    Yes.

12         Q.    You have no engineering background, do you?

13         A.    No.

14         Q.    Now, I think the last position you had taken us

15   up to was the position in Lawrence dealing with shipments

16   and the MINX system.  Do you have a memory of when you

17   first went to Lawrence?

18         A.    Somewhere after '92.

19         Q.    Did you remain at Lawrence until your layoff?

20         A.    Yes.

21         Q.    Do you recall what your job title was at

22   Lawrence?

23         A.    No.

54

1        A.    I can't remember when I started in Lawrence.

2    It was, has to be after that last review I had from Carol

3    Morse.

4        Q.    Which was in December of 1991.

5        A.    So I don't remember when it was.  I thought it

6    was '92.  But whatever it was, it had to be after that

7    they called and asked me to come up there.

8        Q.    At the time that you were asked to go to

9    Lawrence, did anyone say to you that that was a temporary

10   position?

11       A.    No.  The implication was that it was.  You

12   know, we need help, come on up.  I've done it before in

13   previous jobs.  I had went from one department and then

14   gone down to Brighton to help people.

15       Q.    Was there any discussion of your returning to

16   Billerica at some point?

17       A.    No.  They just said, you know, we need to get

18   the job done.

19       Q.    Did someone say when you get the job done

20   you're going back to Billerica?

21       A.    My recollection, I thought they did, but I'm

22   not sure at this point in time.  It's been so long.

23       Q.    Is it length of the time that has passed making

LEAVITT REPORTING, INC.

1    it difficult for you to remember details of this nature?

2        A.    Yeah.

3        Q.    Do you have any recollection of who it is that

4    said to you that you would go back or you might go back?

5        A.    I think it's one of those two people.

6        Q.    Hannon or Schroeder?

7        A.    Right.

8        Q.    Did you have any conversations with your then

9    supervisor, Carol Morse, about this departure?

10       A.    Yeah.  I probably did because I wound up in

11   Lawrence, so, I mean.

12       Q.    Do you have a memory of a conversation with

13   Miss Morse?

14       A.    No.

15       Q.    Do you have a memory of a conversation with

16   anyone at Billerica relating to your departure or any

17   subsequent return?

18       A.    I'm sure I mentioned it to some of my workers

19   that I was going up to Lawrence to do something, but on

20   the return portion I don't remember.

21       Q.    What did you understand would be the trigger

22   for you to return to Billerica?

23       A.    Once the MINX system was in place, then they

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                                    \*
STEPHEN BECKMAN,                                    \*
          Plaintiff,                                \*
                                                    \*        C.A. No.: 03-CV-12567NG
v.                                                  \*
                                                    \*
BULL HN INFORMATION SYSTEMS INC.,                   \*
          Defendant                                 \*
                                                    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT, BULL HN INFORMATION SYSTEM INC.'S ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Pursuant to Fed.R.Civ.P. 37(a), now comes the Plaintiff, Stephen Beckman, by and through his attorneys, and requests the Court to: (1) overrule Defendant, Bull HN Information Systems Inc.'s objections to Plaintiff's Interrogatories, Nos. 4, 5, 6, 18, 21 and 23 and Document Response Nos. 2, 6 and 13;  (2) order Defendant to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answers in compliance with the rules, to Interrogatories Nos. 4, 5, 6, 18, 21 and 23 and full, complete and responsive documents in compliance with the rules to Document Requests No. 2, 6 and 13; and, (3) impose sanctions upon Defendant and their counsel including awarding Plaintiff reasonable attorneys' fees and costs incurred as the result of the Defendant's failures to have answered these interrogatories in accordance with the rules.

The grounds for this motion are set forth in the following memorandum.

1

## CERTIFICATE AS TO COMPLIANCE WITH LOCAL RULE 37.1

Plaintiff has complied with Local Rule 37.1. Counsel for Plaintiff, Nancie L. Edgren and Counsel for Defendant, Kelly Black-Holmes, conferred via telephone on January 13, 2005 at approximately 3:00 p.m. for approximately fifteen minutes. The parties were able to resolve their dispute with regard to Interrogatory Nos. 19 and 25 and Document Request Nos. 3 and 11. Thereafter, the parties entered into a Stipulated Protective Order and Defendant provided additional documents pursuant to the Protective Order. The parties have not been able to resolve their dispute regarding the following interrogatories and document requests:

## MEMORANDUM

## INTERROGATORY NO. 4

With respect to the Defendant's entire employment force, please state:

a.   The name of each job category and subcategory from January 1, 1993 to date;

b.   The duties performed and responsibilities fulfilled by employees in each job category and subcategory,

c.   The number of (i) employees under the age of 40, and (ii) employees of the age of 40 and over, in each job category and subcategory each year as of January 1, 1993 to date.

## ANSWER NO. 4

Bull HN objects to Interrogatory No. 4 on the grounds that it is overbroad, unduly burdensome, oppressive, and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence.

## ARGUMENT

Defendant's objections to Interrogatory No. 4 are without merit. Requiring the

Defendant to provide information regarding its workforce, including the number of employees under and over the age of forty is well within the bounds of permissible discovery. Fed.R.Civ.P. 26 and 33; Local Rules 26.1 and 33.1. Fed.R.Civ.P. 26 states that as a matter of right,

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter....[    ] Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.....

(Emphasis added.)

Certainly, information pertaining to the age of the Defendant's work force is relevant to the Plaintiff's age discrimination claims and is also likely to lead to the discovery of admissible evidence because such evidence may show that the Defendant had a history of discriminatory animus and pattern of terminating older employees. The objections should be overruled and the Defendant should be required by the Court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 4 in compliance with the rules.


## INTERROGATORY NO. 5

For each employee identified in Interrogatory No. 4, who was terminated during the period from January 1, 1993 to the present, state:

a.      The name of the employee;

b.      The job category or subcategory of the employee;

c.      The nature of the termination, such as layoff, voluntary quit, discharge for cause, etc.

d.      A statement of any transfer offered to the employee prior to termination and as an alternative to termination;

e.      The age of the employee at the time of termination;

f.      The years of service of the employee at the time of termination;

g.      The ages of all other employees remaining in the terminated employee's place of business or other working area at the time of termination;

h.      The years of service of all other employees remaining in the terminated employee's place of business or other working areas at the time of termination (stated in such a manner as can be correlated with the answers to subparagraph g),

i.      The age of the replacement, if any, or person assuming the duties for each terminated employee;

j.      The years of service of the replacement for each terminated employee;

k.      A statement of each reduction in pay or downgrading in position of the terminated employee within five years prior to the date of his or her termination.

## ANSWER NO. 5

Bull HN objects to Interrogatory No. 5 on the grounds that it is overbroad, unduly burdensome, oppressive, and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence. Bull HN further objects on the grounds that this Interrogatory may infringe upon the privacy rights of others, who are not party to this action.

Subject to and without waiving the foregoing specific or general objections, Bull HN refers Beckman to the documents provided in response to Beckman's Document Request 2 which contain data pertaining to the Point in Time Lawrence Manufacturing Layoffs in 1994 and

1995 and the Lawrence Manufacturing Plant Shutdown Layoffs in 1995.

## ARGUMENT

Bull's Answer to Interrogatory No. 5 is incomplete and non-responsive because Plaintiff requested information pertaining to all of the layoffs, not just the Lawrence Plant or the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 and the Lawrence Manufacturing Plant Shutdown Layoffs in 1995. Information pertaining to all of the employees that Bull laid off is reasonably likely to lead to the discovery of admissible evidence because such evidence may show that Bull had a discriminatory animus and a pattern of laying off older workers. The Defendant's objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 5 in compliance with the rules.

## INTERROGATORY NO. 6

Please state whether the Defendant has ever received a complaint of discrimination based on age. If yes, please state:

a.    Whether the date when the complaint was received, or when the charge, notice, or action was filed;

b.    The office or the court in which the matter was filed, and the docket number or other numerical designation;

c.    The name of the complainant or plaintiff and the name of the employer;

d.    The current status of the charge, notice or complaint, if it is currently longer pending;

e.    The disposition of the charge, notice or complaint if it is no longer pending.

**ANSWER NO. 6**

Bull HN objects to Interrogatory No. 6 on the grounds that it is overbroad, unduly burdensome, oppressive, and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing specific or general objections, Bull HN refers Beckman to the documents provided in response to Beckman's Document Request 13 which contain all court and administrative agency filings in connection with age discrimination claims stemming from either the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or the Lawrence Manufacturing Plant Shutdown Layoffs in 1995, and states that the lawsuit brought by Robert Madigan has been settled and dismissed, the administrative charge brought by Jeannette Giguere has been closed and the administrative charges brought by John Howe and Frank Gomez remain pending.

**ARGUMENT**

Defendant Bull has provided only those court and administrative filings filed in connection with discrimination claims stemming from either the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or the Lawrence Manufacturing Plant Shutdown Layoffs in 1995, however, Plaintiff requested information pertaining to all complaints of discrimination based on age. The information pertaining to other complaints of discrimination is reasonably likely to lead to the discovery of admissible evidence because such evidence may show that Bull had a discriminatory animus and a pattern of laying off older workers. There are additional complaints filed against Bull as evidenced by the document provided during the course of discovery by Bull showing that there are at least eight complaints filed, although the

other information pertaining to the other complaints has been redacted. See Exhibit A attached hereto. Furthermore, the parties have entered into a Protective Order thereby protecting the privacy rights of other former employees.

The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 6 in compliance with the rules.

## INTERROGATORY NO. 18

For each terminated employee based on layoff or job elimination, for the period January 1, 1993 to the present, please state:

a.     The name, position, department, salary, and age of each employee who was affected;

b.     The criteria established to select employees for layoff or job elimination;

c.     The date of each layoff or job elimination;

d.     The form and manner of communication of each;

e.     The reason for each layoff or job elimination;

f.     The name, title, and age of the person responsible for determining which employees were affected.

## ANSWER NO. 18

Bull HN objects to Interrogatory No. 18 on the grounds that it is overbroad, unduly burdensome, oppressive, and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence. Bull HN further objects on the grounds that this Interrogatory may infringe upon the privacy

rights of others, who are not party to this action.

Subject to and without waiving the foregoing specific or general objections, Bull HN refers Beckman to the documents provided in response to Beckman's Document Request 2 which contain data pertaining to the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 and the Lawrence Manufacturing Plant Shutdown Layoffs in 1995.

## ARGUMENT

Bull's Answer to Interrogatory No. 18 is non-responsive because Plaintiff requested information pertaining to all of Bull's layoffs, not just the Lawrence Plant or the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 and the Lawrence Manufacturing Plant Shutdown Layoffs in 1995. Information pertaining to all the laid off employees is reasonably likely to lead to the discovery of admissible evidence because such evidence may show that Bull had a discriminatory animus and a pattern of laying off older workers. The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 4 in compliance with the rules.

## INTERROGATORY NO. 21

Were other employees subject to layoff or job elimination based on the same factors that resulted in plaintiff's layoff or job elimination? If yes, please state:

a.      The total number of employees terminated or laid off as a result of these factors;

b.      Their names, titles and ages;

c.      The date of their layoff or job elimination;

d.    The date of recall, if any.


## ANSWER NO. 21

Bull HN objects to Interrogatory No. 21 on the grounds that it is overbroad, unduly

burdensome, oppressive, and seeks information which is neither relevant to the claims or

defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence.

Bull further objects on the grounds that this interrogatory may infringe upon the privacy rights of

others who are not party to this action.

Subject to and without waiving the foregoing specific or general objections, Bull HN

states that at the time that Beckman was selected for layoff, one other employee in Beckman's

group was also selected for layoff and provides the following data on that employee as of the

date of Beckman's layoff:

> Name:  [Name withheld]
> Title:  Accountant I
> Ages:  29 years
> Notification date of layoff:  December 16, 1994.


## ARGUMENT

Bull's Answer to Interrogatory No. 21 is non-responsive and incomplete because Plaintiff

requested whether other employees were subject to layoff or job elimination based on the same

factors that resulted plaintiff's layoff or job elimination, however, Defendant responded by

providing the name of one person in Plaintiff's group.  Plaintiff did not narrow the request solely

to Plaintiff's group.  Whether Defendant used the same factors to lay off other individuals and

their ages is relevant to the Plaintiff's age discrimination claim because such evidence may show

that the reasons given for his layoff were merely Pre-Textual if others were not subject to the

same criteria as he was other older workers in selection for layoff. The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 21 in compliance with the rules.

**INTERROGATORY NO. 23**

Please identify the average age of the defendant's workforce at the time of the Plaintiff's layoff or job elimination compared to the present average age as follows:

a.      Total employees on a full-time equivalency basis,

b.      By department,

c.      By employees in plaintiff's pay scale or job grade.

**ANSWER NO. 23**

Bull HN objects to Interrogatory No. 23 on the grounds that it is overbroad, unduly burdensome, oppressive, seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing specific and general objections, Bull states that the average age of all manufacturing division employees who worked in the Lawrence, Massachusetts plant and who were on Bull HN's payroll (and were not collecting severance payments), was 47.53 years on December 31, 1994 and 50.29 years on December 31, 1995.

**ARGUMENT**

Defendant, Bull's Answer to Interrogatory No. 23 is not responsive and incomplete

because Plaintiff is seeking information pertaining to Bull's entire workforce, not just the manufacturing division employees who worked in the Lawrence plant. The average age of the Defendant, Bull's entire workforce is relevant to show whether older workers were laid off in larger numbers than other workers. The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Interrogatory No. 23 in compliance with the rules.


## REQUEST NO. 2

All documents and records regarding Defendant's layoffs from January 1, 1993 to the present including names, addresses, title, job descriptions and ages of those laid off.


## RESPONSE NO. 2

Bull HN objects to this request on the grounds that it is overbroad, unduly, burdensome, oppressive and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence. Bull HN further objects on the grounds that this request may infringe upon the privacy rights of others, who are not party to this action. Subject to and without waiving the foregoing specific and general objections, Bull HN will produce the following data in spreadsheet form; layoff notification date, title, and age, regarding layoffs of employees who worked in the manufacturing division of Bull HN in the Lawrence, Massachusetts plant and show notification date occurred in 1994 and 1995 prior to the decision to shut down the Lawrence, Massachusetts plant (the "Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995"). Without admitting that Beckman was part

of the layoffs arising out of Bull HN's decision to shut down the Lawrence, Massachusetts plant,

Bull HN will also produce the same type of data in spreadsheet form regarding layoffs of

employees who worked in the manufacturing division of Bull HN in the Lawrence,

Massachusetts plant and whose notification dates occurred in 1995 after the decision was made

to shut down the Lawrence, Massachusetts plant (the "Lawrence Manufacturing Plant Shutdown

Layoffs in 1995").

## ARGUMENT

Plaintiff requested documents concerning all layoffs from January 1, 1993, to the

Present. Information pertaining to the layoffs is relevant to the Plaintiff's age discrimination

claims and is also likely to lead to the discovery of admissible evidence because such evidence

may show that the Defendant had a history of discriminatory animus and pattern of laying off

older employees. Furthermore, the parties have entered into a Protective Order thereby

protecting the privacy rights of other former employees. The objections should be overruled and

the Defendant should be required by the court to serve upon Plaintiff's counsel within 10

calendar days of the entry of the court's order on this motion, full, complete and responsive

response to request No. 2 in compliance with the rules.

## REQUEST NO. 6

Any waivers or releases the Defendant may have signed to settle pending EEOC or

MCAD claims, civil suits, or in conjunction with employee discharges, voluntary or involuntary

layoffs.

**RESPONSE NO. 6**

Bull HN objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence. Bull HB also object to this interrogatory to the extent that it seeks confidential settlement documents. Subject to and without waiving the foregoing specific and general objections, Bull HN will produce the non-confidential waivers or release that it signed, if any, in connection with age discrimination claims stemming from either the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or from the Lawrence Manufacturing Plan Shutdown Layoffs in 1995.

**ARGUMENT**

Plaintiff requested documents Any waivers or releases the Defendant may have signed to settle pending EEOC or MCAD claims, civil suits, or in conjunction with employee discharges, voluntary or involuntary layoffs. Once again, the Defendant narrowed the request and responded providing information pertaining only to the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or from the Lawrence Manufacturing Plant Shutdown Layoffs in 1995. Defendant's response is therefore not complete. Information pertaining to other claims of discrimination is likely to lead to the discovery of admissible evidence because such evidence may show that the Defendant had a history of discriminatory animus and pattern of laying off older employees. The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Request No. 6 in compliance with the rules.

**REQUEST NO. 13**

All documents concerning any litigation, complaints, or charges involving age discrimination by employees of the Defendant, from January 1, 1993 to the present.

**RESPONSE NO. 13**

Bull HN objects to this request on the grounds that it is overbroad, unduly burdensome, oppressive and seeks information which is neither relevant to the claims or defenses of the parties nor reasonably likely to lead to the discovery of admissible evidence. Without waiving the foregoing specific objections, Bull HN will produce all court and administrative agency filings in connection with age discrimination claims stemming from either the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or the Lawrence Manufacturing Shutdown Layoffs in 1995.

**ARGUMENT**

All documents concerning any litigation, complaints, or charges involving age discrimination by employees of the Defendant, from January 1, 1993 to the present. Once again, the Defendant narrowed the request and responded by providing information pertaining only to the Point in Time Lawrence Manufacturing Layoffs in 1994 and 1995 or from the Lawrence Manufacturing Plant Shutdown Layoffs in 1995. Defendant's response is therefore not complete. Information pertaining to other claims of discrimination is likely to lead to the discovery of admissible evidence because such evidence may show that the Defendant had a history of discriminatory animus and pattern of laying off older employees. The objections should be overruled and the Defendant should be required by the court to serve upon Plaintiff's

14

counsel within 10 calendar days of the entry of the court's order on this motion, full, complete and responsive answer to Request No. 13 in compliance with the rules.

## REQUEST FOR HEARING AND ORAL ARGUMENT.

Plaintiff requests a hearing and oral argument. There is currently a status conference scheduled for March 22, 2005, at which time this Motion could be addressed.

Respectfully submitted,
The Plaintiff,
By his attorneys,


/s/ Nancie L. Edgren
Denise L. Page, Esq.
BBO No. 119415
Nancie L. Edgren, Esq.
BBO No. 648665
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
617.723.9800

Date: March 2, 2005


[313835]

# EXHIBIT A



**Kurt A. Ogle**
Vice President,
General Counsel & Secretary

August 9, 2004

<u>Send by Facsimile and Regular Mail:</u>  (617) 565-3196
Mr. Ed Ostolski
Investigator
U.S Equal Employment Opportunity Commission
Boston Area Office
John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA  02203

Re:    Various EEOC Related Charges Against Bull HN Information Systems Inc.

Dear Mr. Ostolski:

I wanted to provide you with a quick recap of where we are in responding to the various charges that have been filed by former Bull HN Information Systems Inc. employees with the Boston Office of the EEOC.



**REDACTED**

Bull HN Information Systems Inc. • 300 Concord Road • Billerica, MA  01821
Tel: 978-294-5448 • Fax: 978-294-7999 • kurt.ogle@bull.com • www.bull.com/us

BULL\SB  2782

REDACTED

**New Charges Recently Filed for Which Extensions Are Requested:**

The purpose of this letter is to set forth the proposed extension dates for Bull HN to respond to Charges that have been filed since our last letter to you. The reasons for these extensions are similar to the ones that have been previously articulated. We have also assumed that it would be the EEOC's preference for responses to be filed in the order in which the charges have been filed.

| Name of Charging Party | Charge No. | Date by Which Response Shall be Sent to the EEOC |
|---|---|---|
| | REDACTED | |
| 3. Howe | 161-2004-00342 | October 13, 2004 |

REDACTED

We believe that permitting Bull this additional amount of time on these charges and permitting more than the traditional two (2) weeks to respond with charges in the future will ultimately facilitate the EEOC's goal of having the opportunity to evaluate both sides' position in the particular case before deciding whether there is probable cause of age discrimination. Unless we hear from you to the contrary, we will assume that the EEOC is in agreement with an extension for Bull to send responses to the matters described above by the dates indicated.

We appreciate your understanding on this matter.

Sincerely,

Kurt A. Ogle
General Counsel
Bull HN Information Systems Inc.