UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN BECKMAN )<br>)<br>v. )<br>)<br>BULL HN INFORMATION )<br>SYSTEMS INC. )<br>) | CIVIL ACTION NO.: 03-12567-NG |

**OPPOSITION OF DEFENDANT BULL HN INFORMATION SYSTEMS INC.
TO PLAINTIFF STEPHEN BECKMAN'S MOTION FOR RECONSIDERATION OF
<u>ORDER DENYING MOTION TO COMPEL</u>**

I. **<u>Introduction</u>**

The Defendant Bull HN Information Systems Inc. ("Bull HN") hereby opposes the pending motion of Plaintiff Stephen Beckman ("Plaintiff" or "Beckman"), styled by Beckman as Motion for Reconsideration to Compel Answers to Interrogatories and Production of Documents ("Motion for Reconsideration"). As has been previously explained in Bull HN's Opposition to Plaintiff's Motion to Compel ("initial Opposition"), filed on March 25, 2005 and incorporated by reference herein, Bull HN has diligently and appropriately responded to Beckman's sweeping discovery requests, which seek documents and information relating to thousands of former and current Bull HN employees nationwide.

Although this Court has provided Plaintiff with an opportunity "to address the implications of the <u>Smith v. Jackson</u> decision on the discovery issues in the above entitled case," Plaintiff has failed to establish why <u>Smith v. Jackson</u>, 161 L. Ed. 2d 410 (2005), has any bearing whatsoever on this case, and why that decision should change the scope of discovery in this case.

The United States Court of Appeals for the First Circuit has clearly mandated that plaintiffs tailor their discovery "to suit the particular exigencies of the litigation." Mack v. Great Atlantic & Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989). For the reasons discussed below, the "particular exigencies" are logically different if a discrimination case is based upon a disparate impact, as opposed to a disparate treatment, claim.

II.   **Argument**

    A.   **Plaintiff Has Failed to State a Disparate Impact Claim.**

In his Motion for Reconsideration, Plaintiff states that he has alleged age discrimination "whether it be based upon disparate treatment or disparate impact." (Motion for Reconsideration at 3). This is certainly not helpful to the inquiry at hand, to wit: whether this Court should reconsider the Order denying Beckman's motion to compel an extraordinarily broad swath of discovery. In any event, a review of Plaintiff's Complaint and of his Motion for Reconsideration demonstrates that Plaintiff in fact has not alleged the prerequisites for a disparate impact claim, but, rather, has continued to rely exclusively upon a disparate treatment theory.

Simply stated, a disparate treatment case requires proof of discriminatory intent. Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003). By contrast, a discriminatory impact case, which does not require a showing of discriminatory intent, is premised upon a facially neutral policy that, in practice, imposes a heavier burden upon members of a protected class than it does upon those who are not members of that class. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (disparate impact claims involve "'employment practices that are facially neutral in the treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by a business necessity'") (quoting Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977)); Mack, 871 F.2d at 184 (plaintiff

must "identify[] the facially neutral practice or policy which gives rise to the alleged discriminatory impact [and] show[] a causal relationship between the challenged employment practice and the alleged discriminatory impact") (internal quotation and citation omitted).

In the discovery context, the statistics that are relevant and discoverable – i.e., that satisfy the "particular exigencies" test -- in a disparate treatment case are the statistics that relate to the same decision maker(s) as involved in the lawsuit in which the discovery is propounded. Hillstrom, 354 F.3d at 32 ("Valid statistical evidence may play a helpful role even in disparate treatment cases, but only if it tends to prove the discriminatory intent of the decisionmakers involved."). It is therefore necessary to identify the relevant decision maker(s) in order to define the proper scope of discovery. By contrast in a disparate impact case, the statistics that are relevant and discoverable are governed by the scope and application of the facially neutral policy. Mack, 871 F.2d at 184. It is therefore necessary to identify the allegedly offending policy and determine the breadth of its application. "[M]ere citation of employment statistics and … general references to some vague, undefined policy of discrimination" are not enough. Id.

The Court of Appeals for the First Circuit has long made it clear that identification of the challenged employment practice or policy is the very first element of proving a *prima facie* case of disparate impact. See EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995). The United States Supreme Court, in the very case that precipitated the present motion, has also made it clear that, when relying upon statistical evidence, "it is not enough to simply … point to a generalized policy that leads to such an impact." Smith v. Jackson, 161 L. Ed. 2d at 422; see also Mack, 871 F.2d at 184. Rather, the plaintiff "is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed

-3-

statistical disparities." Smith v. Jackson, 161 L. Ed. 2d at 422 (internal quotation and citation omitted).

Plaintiff has not yet pled a disparate impact claim, much less specifically identified an allegedly offending facially neutral policy. As of the time of filing the Complaint, this was not particularly surprising, given that the Court of Appeals for the First Circuit has not recognized a cause of action for disparate impact in an age context since 1999.[1] What is surprising, however, is that Plaintiff has made no effort to specify the allegedly offending policy in response to this Court's invitation. At this point, the issue is whether Plaintiff can plausibly plead such a cause of action on a going-forward basis. It is clear from the record, and from the existing Complaint, that he cannot. The critical deficiency is this: Beckman does *not* contend that there was a facially neutral policy that created a disparate impact on older workers.[2] To the contrary, he asserts that Bull HN *intentionally* selected older employees for lay-off. Indeed, Beckman emphasizes the Massachusetts Attorney General's allegation that "Bull intentionally terminated older, experienced workers in positions at all levels, while retaining younger, inexperienced and less qualified workers." (Compl. ¶¶ 21-22).

Rather than identifying a facially neutral policy, Plaintiff contends that, "the specific employment practice [at issue] was the laying off of older employees." (Motion for Reconsideration at 7.) This is totally inadequate to support a disparate impact claim for at least two reasons: First, the purported policy constitutes the paradigm of a discriminatory *treatment*

---

[1]   See Mullin v. Raytheon Co., 164 F.3d 696, 703-04 (1st Cir. 1999).

[2]   Such a policy might, for example, be along the following lines: An employer may have instituted mandatory training on a particular software system for all new hires, commencing twenty years ago. When a reduction in force was to occur, the employer may have determined that any employee without the specialized training would be laid off first. Such a policy, while facially neutral, would obviously have a greater impact on employees who joined the company more than twenty years ago. In all likelihood, that would adversely affect employees over the age of 40 to a greater extent than those under 40. In the absence of a legitimate business purpose for this lay-off criterion, the policy would have an impermissible discriminatory impact.

case, not a discriminatory impact case.  See Bramble v. Am. Postal Workers Union, AFL-CIO, Providence Local, 135 F.3d 21, 26 (1st Cir. 1998) (where the challenged policy is not neutral, the disparate impact claim actually "folds into" plaintiff's disparate treatment claim).  Secondly, the purported "policy" is so vague and undefined that it cannot support a discriminatory impact cause of action in any event.  See Mack, 871 F.2d at 184.

If, as Bull HN contends, this is truthfully a discriminatory treatment case, the decision in Smith v. Jackson has no bearing on the Order already entered by this Court denying Plaintiff's motion to compel.  The reasoning previously proffered by Bull HN in opposition to that motion, and previously adopted by the Court in denying that motion, remains valid, and this Motion for Reconsideration is beyond the bounds of the Court's order.  That Order should therefore not be disturbed.

    **B.**    **Even if Plaintiff Could State a Disparate Impact Claim, the Scope of Discovery Would Not Change.**

Throughout his Motion for Reconsideration, Plaintiff argues that he should be allowed access to information pertaining to Bull HN's lay-offs for its entire workforce.[3]  Beckman asserts that he is entitled to such discovery under both a disparate impact and disparate treatment analyses.[4]  Yet, regardless of whether Plaintiff's claims could be classified as disparate impact or disparate treatment, Plaintiff's demand for company-wide data on lay-offs exceeds the scope of

---

[3] Plaintiff has requested that the Court reconsider its Order with regard to the statistics for nationwide lay-offs across all divisions.  Specifically, the plaintiff "respectfully requests that this Court reconsider the previous order denying Plaintiff's Motion to Compel Defendant, Bull Information Systems Inc.'s Answer to Interrogatories and Production of Documents *to allow Plaintiff access to company wide information regarding the Bull layoffs.*" (emphasis added) (Motion for Reconsideration at 8.)  The only disputed discovery requests that seek "company wide information regarding the Bull layoffs" are Interrogatory 18 and Document Request 2.  Accordingly, in this Opposition, Bull HN only addresses the company-wide information regarding lay-offs sought in Interrogatory 18 and Document Request 2.  Although Plaintiff is apparently foregoing all other requests, for a full discussion regarding the other interrogatories and document requests for which Plaintiff originally sought more information, Bull HN refers this Court to its initial Opposition.

[4] In addressing his disparate treatment claim, Plaintiff went beyond the bounds of this Court's Order of March 31 2005, which requested the parties address the implications of Smith v. Jackson.

permissible discovery under the Federal Rules of Civil Procedure and imposes an unacceptable burden and expense on Bull HN.

### 1. In the Absence of Identification of a Specific Facially Neutral Policy, The Scope of Discovery Should Be Limited to Plaintiff's Work Group.

In his Motion for Reconsideration, Beckman cites to various cases that stand for the general proposition that statistics may be used, in appropriate circumstances, to prove both disparate treatment and disparate impact claims. Plaintiff's focus on these cases, however, is misplaced. The dispute is not whether Plaintiff may use statistics in attempting to prove his claims. Rather, the dispute concerns the appropriate scope of discovery with regard to statistical lay-off information. Plaintiff seeks company-wide data on lay-offs that occurred over a period of more than twelve years (ten of them occurring after his lay-off notification date) and involved thousands of employees, who worked in different departments, in different divisions, in different facilities, in different states, and, most significantly for different decision makers than the supervisor who made the decision to lay-off Plaintiff. Beckman cites to no cases for the proposition that company-wide data must be produced. Indeed, he cannot, for the reasons discussed above: In a disparate treatment case (with regard to which this Court has already ruled), the only relevant statistics relate to the same decision maker. In a disparate impact case, the only relevant statistics relate to the divisions affected by a specifically identified, facially neutral policy with an allegedly discriminatory impact. The "policy" identified by Beckman, to wit, laying-off older employees because they are older, is not facially neutral. Beckman therefore cannot avoid the necessity of proving intent on the part of the decision maker involved in Beckman's lay-off. He has received all statistical data on the reductions-in-force in the Manufacturing Division at the Lawrence facility, not only for the year in which he received his lay-off notice (1994), but also for the next year as well. These are the only data that are relevant

to the motive of his decision maker. Data relating to other divisions and other facilities are not relevant to Beckman's decision maker. Data from other years are simply too remote to be probative.[5]

Even if the Court were to fill in the gap left by Beckman and somehow find a legally cognizable reason to order discovery pertaining to other decision makers, the breadth of the discovery included in Beckman's requests is altogether too onerous. As drafted, these requests require all lay-off data for all divisions, in all facilities nationwide, over a twelve-year period. The burden and expense of such an exercise, particularly when weighed against its non-existent probative value in a disparate treatment case involving an isolated decision maker or a purported disparate impact case with no facially neutral policy identified, is simply too onerous.

### 2. No Basis Exists to Expand the Inquiry to Facilities Beyond Lawrence.

As previously explained in Bull HN's initial Opposition,[6] Beckman was working at the time of his lay-off at the Lawrence plant as a Financial Planning Analyst II for the Finance Department of the Manufacturing Division. (3/25/05 Black-Holmes Decl., Ex. B at ¶3).[7] The jobs that Beckman and the others in his work unit performed were specific to the Lawrence plant and the minicomputer systems being assembled there, including the GCOS6 line of minicomputers. (3/25/05 Black-Holmes Decl., Ex. B at ¶2.) Beckman was laid off at the end of 1994, amidst problems facing the Lawrence plant, including the erosion of the GCOS6 product line and the transition to contract manufacturing. (3/25/05 Black-Holmes Decl., Ex. B at ¶ 4.)

---

[5] Because Beckman was notified of his lay-off in December of 1994, the data provided by Bull HN essentially encompass one year before, and one year after, his notification. The notification date was used because that is the date in proximity to the decision. Employees who signed the General Release, and received full severance, technically remained employees for several weeks or months after notification.

[6] For a full summary of relevant facts, Bull HN refers the Court to the Background section of Bull HN's initial Opposition, pp. 2-5.

[7] "3/25/05 Black-Holmes Decl." refers to the Declaration of Kelly S. Black-Holmes in Support of the Opposition of Defendant Bull HN Information Systems Inc. to Plaintiff Stephen Beckman's Motion to Compel Answers to Interrogatories and Production of Documents, filed along with Bull HN's First Opposition on March 25, 2005.

The decision to lay-off Beckman was made by his direct supervisor, Daniel Schroeder, after the Manufacturing Division management asked Mr. Schroeder to identify jobs within the Finance Department at the Lawrence facility that could be eliminated or combined and to recommend employees for lay-off accordingly.  (3/25/05 Black-Holmes Decl., Ex. B at ¶ 4.)  Mr. Schroeder selected Beckman for lay-off because the level of volume of Beckman's activities had declined and because the department could easily shift Beckman's remaining activities to two other employees in higher positions, who had broader understanding of total Finance requirements and who had the skills to perform critical day-to-day activities.  (3/25/05 Black-Holmes Decl, Ex. D at Interrogatory 2 and Ex. B at ¶ 5.)   Mr. Schroeder was never asked to, and he never did, consider laying off any individual outside his work group in the Lawrence Finance Department of Bull HN's Manufacturing Division, let alone outside of the Lawrence factory.[8]

In this case, where Plaintiff's lay-off was directly related to the business conditions at his specific facility, and where the decision to recommend Plaintiff for lay-off was made by his direct supervisor, there is simply no reason to expand the scope of discovery.  Bull HN has already provided information regarding Beckman's specific work group and has voluntarily expanded the scope of discovery and produced information relating to all Manufacturing Division employees who worked at the Lawrence Plant and who were laid off in 1994 and 1995.

### 3. Under the Law, There Is No Basis for the Court to Reverse Its Previous Order.

Bull HN contends that this Court should not revisit its previous Order, given that Beckman has failed to identify a specific policy upon which a disparate impact claim could be

---

[8]  One of Beckman's disclosed witnesses, Frank Gomez, has suggested the possibility of bumping rights.  However, Bull HN never had bumping rights for salaried employees like Beckman.  To the extent that bumping rights existed for hourly workers at any earlier time within the Manufacturing Division, those rights were intra-plant only.  This can be confirmed by affidavit if the Court wishes, but Beckman has not raised the issue of bumping rights in the context of this motion.

premised, and therefore failed to demonstrate any applicability of Smith v. Jackson. A motion for reconsideration is "not appropriately used to present new issues or evidence." Jorge Rivera Surillo & Co., Inc. v. Falconer Glass Indus., 37 F.3d 25, 29 (1st Cir. 1994). Such motions should only be used to establish a manifest error of law or to present newly discovered evidence, and should not be used to "raise arguments which could, and should, have been made before judgment." Federal Deposit Insur. Corp. v. World University, Inc., 978 F.2d 10, 16 (1st Cir. 1992) (internal quotation and citation omitted). But, Beckman has not abided by the guidelines. Rather, he has provided a more detailed analysis of legal precedent regarding the use of statistics in discriminatory treatment cases than he did initially. This is inappropriate.

Bull HN responds briefly hereafter, without waiving its position that the matter of discriminatory treatment has already been decided by this Court, and should not be revisited:

The law is clearly established in disparate treatment cases that statistical evidence should be limited to the same decision makers and to similarly situated employees to whom Plaintiff compares himself. See Hillstom, 354 F.3d at 32 (statistical evidence must "tend[] to prove the discriminatory intent of the decisionmakers involved"); Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995) ("Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff."); Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 320 (7th Cir. 2003) (upholding district court decision limiting scope of discovery to similarly situated employees, time period, and decisionmaker and stating that "[w]hen requesting discovery in an age discrimination suit the other employees circumstances [must be] close enough to [plaintiff's] to make comparisons productive"); In re Western District Xerox Litigation, 140 F.R.D. 264, 271 (W.D. Tex. 1991) (limiting discovery to similarly situated employees, not the entire nationwide

workforce); see also Currier v. United Technologies Corp., 393 F.3d 246, 253 n.7 (1st Cir. 2003) (pointing out that there are cases which "explicitly support [defendant's] argument that statistical evidence must compare similarly situated employees").[9]

Indeed, when employment decisions are made locally, discovery in disparate treatment cases is appropriately limited to the employees within the plaintiff's specific work unit. See, e.g., Mack, 871 F.2d at 187 (relying in part on the decentralized nature of managerial decisionmaking in upholding district court's order restricting discovery to the store at which the plaintiff worked); Early v. Champion Int'l Corp., 907 F.2d 1077, 1085 (11th Cir. 1990) ("Where … the employment decisions were made locally, discovery on intent may be limited to the employing unit."); Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (upholding the district court's decision denying company-wide discovery and stating that "the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit"); Scales v. JC Bradford & Co., 925 F.2d 901, 907 (6th Cir. 1991) (upholding district court's decision to limit discovery to the specific department and location in which the plaintiff worked); Glenn v. Williams, 209 F.R.D. 279, 281-82 (D.D.C. 2002) (limiting discovery to the employing unit and stating "[r]eview of the caselaw … clearly demonstrates that discovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff.").

Although most case law discussing the permissible scope of discovery arises in the disparate treatment context, cases also exist supporting similar limitations on discovery in the

---

[9] Although Beckman asserts that this case allowed statistical evidence regarding the "entire workforce," he conveniently overlooks that the evidence allowed was for the entire workforce at the ***particular plant*** at which plaintiff worked. In Currier, the dispute regarding similarly situated employees did not stem from an attempt to go outside the plaintiff's plant to gather data company-wide. Rather, the dispute was as to whether the data should be limited to all employees at plaintiff's plant, or only to those people holding the same job as plaintiff, or, at most, to those other employees at the same plant who were actually susceptible to lay-off. Currier, 393 F.3d at 250.

-10-

disparate impact context.  See Kresefsky v. Panasonic Communications & Sys. Co., 169 F.R.D. 54, 66 (D.N.J. 1996) (with regard to both disparate impact and disparate treatment claims, "information must be limited in scope in accordance with Fed. R. Civ. P. 26(b)(1) and tied to the allegations of plaintiff's complaint") (internal quotation and citation omitted).  Relevant statistical grouping for a disparate impact claim are those that include the "at issue" jobs.  See Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 650-51 (1989) (rejecting the plaintiff's attempt to compare the racial composition between defendant's unskilled cannery jobs and its mostly skilled non-cannery jobs, and explaining that in a disparate impact case, "the proper comparison" is "between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs").  While the phrase "at issue jobs" is undefined, it certainly has a logical import, and Plaintiff has cited no authority that provides that the "at issue" jobs are those pertaining to a defendant's *entire workforce*.

In this case, Plaintiff is a finance employee who has been laid off from a salaried, skilled job performed at a particular plant.  Bull HN might well have limited its voluntary discovery to "at issue" jobs consisting of other jobs within Beckman's specific work unit.  Indeed, such limitations on scope of discovery have been upheld in disparate impact cases.  See Kresefsky, 169 F.R.D. at 66 (limiting much of plaintiff's discovery to plaintiff's specific work unit); Joslin Dry Goods Co. v. EEOC, 483 F.2d 178, 184 (10th Cir. 1973) (affirming the district court's decision to limit the EEOC's investigation to the store at which the plaintiff worked).  In addition, the key First Circuit decision that discusses discovery limits in an employment discrimination case, Mack, arguably has at least some application to disparate impact claims, as well as disparate treatment claims, because the Court's decision addresses summary judgment arguments with respect to both types of claims.  See 871 F.2d at 184.  As Bull HN has already

voluntarily produced documents that exceed the scope of what is required under the "at issue jobs" standard, Plaintiff should not now be permitted to require Bull HN to provide even broader information given the foregoing case law.

### 4. Plaintiff Has Not Come Forward with Evidence Establishing a Particularized Need for Company-Wide Data.

Under both disparate treatment and disparate impact analyses, discovery limitations have been imposed and upheld, absent "*particularized* need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." Early, 907 F.2d at 1085 (citing Joslin, 483 F.2d at 183-84) (emphasis added); see also Kresefsky, 169 F.R.D. at 67 ("Plaintiffs have at this time demonstrated no entitlement to any further information regarding defendants' personnel practices or policies.")  The test for determining the existence of a particularized need and likely relevance is not, as Beckman suggests, merely that discovery be potentially useful in establishing the presence or absence of a general climate of age discrimination. (Motion for Reconsideration at 5.)  Certainly, such "usefulness" is just the type of fishing expedition that courts have attempted to prevent. See Early, 907 F.2d at 1085 ("A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry."); Mack, 871 F.2d at 187 (plaintiffs "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up.") Moreover, Beckman's use of the Cecile Wright Affidavit in an attempt to show that data exists with which he has not been provided is patently misleading.  Although Beckman has made sweeping demands for all types of employee data from 1993 forward, Beckman has never specifically requested the backup data for Cecile Wright's Affidavit.

### 5. Beckman's "Temporary Assignment" Argument Does Not Satisfy the Particularized Need Test.

In an apparent attempt to show a particularized need for data beyond the last locus of his employment (i.e., Lawrence), Beckman argues that he believed his work assignment in Lawrence was only temporary. Because he allegedly did not know his next assignment, he suggests that he should be provided with data for other places where he might one day have worked. This argument constitutes a red herring that should not bear on the breadth of permissible discovery. Beckman does not deny that at the time of his lay-off he worked for a discrete group within the Finance Department of the Manufacturing Division at the Lawrence Plant. Nor does he have any basis to dispute his direct supervisor's contention that it was he who made the decision to place Beckman's name on the lay-off list.

Without any particularized need to expand the scope of discovery beyond the natural focus of the case, Plaintiff seeks to conduct a fishing expedition to find evidence that (he hopes) will portray Bull HN as a whole in a negative light. Such a fishing expedition is improper and should not be permitted. See Marshall, 576 F.2d at 592 (a plaintiff is not permitted "'to go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.")

## III. Conclusion

Bull HN has provided Plaintiff with the relevant documents and information relating to his own employment and lay-off, as well as that of potentially similarly situated employees. Despite the more expansive arguments now proffered by Plaintiff, he has failed to come forward with any reason why the holding in Smith v. Jackson should broaden the scope of discovery or alter the discovery Order previously issued.

Wherefore, Defendant Bull HN Information Systems Inc. respectfully requests that this Court deny Plaintiff's Motion for Reconsideration.

In the event that this Court disagrees with the arguments contained herein and orders the production of further documents and/or information, Bull HN respectfully requests that this Court grant it at least forty-five days in which to provide documents and/or information pertaining to Massachusetts facilities, and sixty days for documents and/or information pertaining to out of state facilities.

Respectfully submitted,

BULL HN INFORMATION SYSTEMS INC.

By its attorneys,

/s/ Kelly S. Black-Holmes_____
Joan A. Lukey (BBO #307340)
Kelly S. Black-Holmes (BBO# 650461)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Dated:  April 29, 2005

### Request for Oral Argument

Pursuant to Local Rule 7.1(D), Bull HN respectfully requests that the Court hear oral argument on this matter.

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2005, I caused a true and accurate copy of the above document to be served by electronic transmission upon Denise L. Page, Esq. and Nancie L. Edgren, Esq., Barron & Stadfeld, P.C., 50 Saniford Street, Boston, MA 02108.

/s/ Kelly S. Black-Holmes
Kelly S. Black-Holmes

US1DOCS 5073326v1