## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
STEPHEN BECKMAN,                              )
)
Plaintiff,                )
)
v.                          )            CIVIL ACTION NO.:  03-12567-NG
)
BULL HN INFORMATION                           )
SYSTEMS INC.,                                 )
)
Defendant.                )
_____)

### BULL HN INFORMATION SYSTEMS INC.'S
### STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, defendant Bull HN Information Systems, Inc. ("Bull HN" or

the "Company") hereby submits the following statement of undisputed material facts in support

of its Motion for Summary Judgment.

**I.      Bull HN's Stated "Reasonable Factor Other Than Age" And "Legitimate Non-Discriminatory Reason" For Laying Off Stephen Beckman.**

1.      Starting in 1991 and continuing throughout the 1990s, the Manufacturing

Division at Bull HN experienced a significant decrease in the volume of units it was to

manufacture.  (Ex. 1, Affidavit of Mary Carrigan ("Carrigan Aff.") at ¶ 2.)  The reduction in

manufacturing volume left the Manufacturing Division with more manufacturing capacity than

Bull HN had business requirements to fulfill.  (*Id*.)  As the manufacturing volume decreased, so,

too, did the volume of activity within support functions such as Finance.  (*Id*.)

2.      Due to these financial pressures, Bull HN was forced to undertake drastic cost-

cutting measures.  (Ex. 2, Affidavit of Cecil Wright ("Wright Aff.") at ¶ 2; *see also* Ex. 1,

Carrigan Aff. at ¶ 4.)  As part of these cost-cutting measures, Bull HN laid off a very substantial

number of people.  (Ex. 2, Wright Aff. at ¶ 2; *see also* Ex. 1, Carrigan Aff. at ¶ 4.)  On December 31, 1989, 8,902 people were employed by Bull HN in the U.S.  (Ex. 2, Wright Aff. at ¶ 2.)  The number decreased to 2,013 by December 31, 1995.  (*Id*.)  In Massachusetts alone, 4,025 people were employed by Bull HN on December 31, 1989.  (*Id*.)  The number of Massachusetts employees decreased to 1,037 by December 31, 1995.  (*Id*.)

3.    For the Manufacturing Division (the division in which Beckman worked), Mary Carrigan, along with the President of Manufacturing, and other relevant members of his staff, determined what reduction-in-force was necessary to meet cost-cutting requirements.  (Ex. 1, Carrigan Aff. at ¶ 5.)  The same management group examined the remaining workload and determined how many employees would be laid off from each department within the Division to align the workforce with the amount and type of work generated.  (*Id*.)  Department managers were informed of what percentage of his or her employees needed to be laid off and were directed to examine the skills necessary for the department and to recommend for layoff those employees whose positions could be eliminated or combined.  (*Id*.)

4.    As part of the aforementioned process, Daniel Schroder, Beckman's manager in 1994, was asked to look for jobs that could be "eliminated or combined" given the decrease in manufacturing and to recommend certain employees for layoff.  (*See* Ex. 3, Affidavit of Daniel Schroeder ("Schroeder Aff.") at. ¶¶ 4.)

5.    During the relevant time period, Beckman's job duties in the Finance department of the Manufacturing Division included performing financial modeling for systems being assembled and working with planned cost of shipments, surplus, and scrap materials, as well as assisting with periodic inventories.  (*Id*. at ¶ 3.)

6.      Mr. Schroder selected Beckman for layoff because:  (1) the level and volume of his activities had declined and (2) Mr. Schroder's department could easily shift Beckman's remaining activities to other employees in higher positions who had a broader understanding of the total Finance functional requirements and who had the skills to perform critical day-to-day activities.  (*Id.* at ¶ 5; *see also* Ex. 1, Carrigan Aff. at ¶ 10.)

7.      At all times, including in 1994, selections of employees in the Manufacturing Division for layoff were done in accordance with Bull HN's Work Force Reduction Policy.  (*See* Ex. 1, Carrigan Aff. at ¶ 6.)

## II.   Not Only Is There No Evidence To Rebut Bull HN's Non-Discriminatory Reason For Laying Beckman Off, But The Unrebutted Evidence Affirmatively Supports That Reason.

8.      Beckman admits that the manufacturing facilities at Bull HN were experiencing layoffs in the 1990s in general and in the 1993-1994 time frame in particular.  (Ex. 4, Deposition of Stephen Beckman at 37:8-10; *see also id.* at 51:13-15.)[1]

9.      During this time period, however, Beckman was not in a position to view the Company's financial numbers, did not pay attention to the overall financial health of the Company, did not know what concerns the Company had, and did not know to what extent Bull HN's workforce in the United States had shrunk.  (*Id.* at 38:21-39:19.)  He also did not know whether Bull HN was phasing out products, reducing volume to meet declining demand, or was engaging in cost-cutting.  (*Id.* at 43:5-20; *id.* at 48:7-49:2.)

10.     John J. Hannon, a former Bull HN employee identified by Mr. Beckman as a potential witness, stated that he was well aware of the economic difficulties at Bull HN that led

---

[1]      For the Court's convenience, only cited pages of the deposition transcripts are attached.  Should the Court wish to view the transcripts in their entirely, Bull HN will, of course, submit them.

to layoffs in the late 1980s and early 1990s, and that the Company was experiencing serious financial issues in the 1990's. (Ex. 5, Deposition of John J. Hannon at 28:1-29:19.) This environment had a negative effect on the finance departments in the Manufacturing Division, in that the Company did not need as many people performing financial functions in this area. (*Id*. at 30:15-31:1.) This situation led to layoffs. (*Id*.)

11.     Another former Bull HN employee identified by Mr. Beckman as a potential witness, John Desousa, stated that Bull HN employees had known since at least 1986 that Bull HN's revenues and profits were declining and that the Company was laying off employees. (Ex. 6, Deposition of Joseph Desousa 24:12-25:7) Mr. Desousa observed that this situation resulted in lower manufacturing volumes, which, in turn, lead to layoffs in the Manufacturing Division. (*Id*. at 28:3-15.)

12.     Frank Gomez, who was also a Bull HN employee identified by Mr. Beckman as a potential witness, observed that Bull HN was suffering from declining profits and revenues as well as from lower production during the 1993-1994 time period. (Ex. 7, Deposition of Frank Gomez at 26:11-27:11.)

13.     Finally, John E. Howe, who also worked at Bull HN during the relevant time period  and was identified by Mr. Beckman as a potential witness, testified that it was common knowledge that the Company's manufacturing volume was lessening and that Bull HN was not doing well economically. (Ex. 8, Deposition of John E. Howe at 16:11-17:1.)

Respectfully submitted,

**BULL HN INFORMATION SYSTEMS INC.**

By its attorneys,

/s/ Benjamin M. Stern _____
Joan A. Lukey (BBO #307340)
Benjamin M. Stern (BBO #646778)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
Tel:  (617) 526-6000
Fax: (617) 526-5000
Email:  benjamin.stern@wilmerhale.com

Dated:  July 14, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2005, I caused a true and accurate copy of the above document to be served via the Court's electronic docketing system and by hand upon Mitchell J. Notis, Esq., Law Office Of Mitchell J. Notis, 370 Washington Street, Brookline, MA  02446

<u>/s/ Benjamin M. Stern</u>_____
Benjamin M. Stern